STATE of Wisconsin, Plaintiff-Respondent,

v.

Lester B. THOMAS, Defendant-Appellant.

Supreme Court

*No. 87–0729–CR. Argued March 2, 1989.—Decided June 23, 1989.*

(Also reported in 442 N.W.2d 10.)

For the defendant-appellant there were briefs and oral argument by *Mark Lukoff,* first assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

HEFFERNAN, CHIEF JUSTICE   (on motion for reconsideration and upon rehearing). On June 28, 1988, this court in *State v. Thomas,* 144 Wis. 2d 876, 425 N.W.2d 641 (1988), upheld the constitutionality and the

application of portions of sec. 967.04(7)–(10), Stats., which provides a procedure for the videotaping of the cross-examined testimony of a child witness and its later production at trial. A day later, the United States Supreme Court in *Coy v. Iowa,* 108 S. Ct. 2798 (1988),[1] decided United States constitutional issues arguably relevant to those decided in *Thomas.* A motion for reconsideration in light of *Coy* was granted on August 23, 1988, and oral argument was had on March 2, 1989.

We conclude that our opinion issued on June 28, 1988, correctly decided the constitutional questions addressed in *Coy,* and we determine that that decision and opinion continues to be the decision and opinion of this court, with, however, the explanatory comments set forth herein.

We first recapitulate the factual predicate and the holdings of *Coy,* and we will then evaluate *Thomas* by the standards established by the United States Supreme Court in *Coy.*

In *Coy,* the United States Supreme Court considered the constitutionality of a 1985 Iowa statute intended to protect child victims of abuse.[2] In *Coy,* two

---

[1] All page references in this opinion to the *Coy* opinion are to the Supreme Court Reporter citation.

[2] Sec. 6, 1985 Iowa Acts 338, codified at Iowa Code sec. 910A.14 (1987), as stated in footnote 1 of *Coy:*

1. Section 910A.14 provides in part as follows:

'The court may require a party be confined *[sic]* to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party. However, if a party is so confined, the court shall take measures to insure that the party and counsel can confer during the testimony and shall inform the child that the party can see and hear the child during testimony.'

thirteen-year-old girls were camping in a tent adjacent to the accused's home when he entered the tent with his face covered with a stocking and sexually molested each of them. He subsequently was charged and was convicted after a jury trial. In what is ostensibly a 6–2 decision, the Court, in an opinion by Justice Scalia, held that the procedure authorized by the Iowa statute violated Coy's sixth amendment rights to confront the witnesses against him. The Iowa trial court, pursuant to the authorization of the statute, approved the use of a large screen to be placed between the defendant and the witness stand during the girls' testimony. Lighting was adjusted to allow the defendant to see the witnesses clearly, but they could not see him. The Iowa Supreme Court affirmed the defendant's conviction, stating that the right to confrontation was not violated because the ability to cross-examine witnesses was not impaired by the presence of the screen. 397 N.W.2d 730 (Iowa 1986).

The United States Supreme Court reversed the decision of the Iowa Supreme Court and remanded for further proceedings. Justice Scalia reasoned that the right of confrontation had the irreducible component of a literal "face-to-face" encounter between the witness and the accused. He reasoned that the very trauma to the witness which the state seeks to obviate is the foundation of the Confrontation Clause—that as a truth-seeking device, it is to be expected and anticipated that the confrontation of accuser and accused is to be traumatic. Justice Scalia wrote, at 2802:

> The face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

Justice Scalia specifically rejected the notion that what he conceives to be an explicit requirement of the Confrontation Clause, the face-to-face encounter, can be satisfied by affording other rights that are only implicitly guaranteed by the Confrontation Clause, *e.g.,* the right to cross-examine, the right to exclude out-of-court statements, and the right to face-to-face confrontation at proceedings other than the trial itself. At 2802.

Thus, Justice Scalia specifically rejected the State of Iowa's argument that cross-examination alone satisfies the confrontation requirement—at least in the absence of *"exceptions . . . necessary to further an important public policy."* (Emphasis supplied.) At 2803.

The state had argued that the general legislative authorization of special treatment for the testimony of child witnesses constituted just such an exception and, therefore, the Confrontation Clause was satisfied by a legislative declaration of policy. Justice Scalia restated the State of Iowa's argument, "that such necessity is established here by the statute, which creates a legislatively imposed presumption of trauma." At 2803.

Justice Scalia wrote, however, that more than a generalized legislative finding underlying such a statute is needed in the circumstances of *Coy.* He stated:

> Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception. At 2803.

As stated above, Justice Scalia ostensibly wrote for a 6–2 majority of the Court. It appears, however, that two members of the Court, Justices O'Connor and White, although joining in the mandate and professedly joining in the opinion, expressly rejected the clear and unambiguous statement of Justice Scalia that the Con-

frontation Clause in all circumstances explicitly required a face-to-face encounter. Justice O'Connor wrote in concurrence that, although the face-to-face requirement had been violated, in some situations such confrontation was "not absolute but rather may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testimony." At 2803.

The concurring opinion then went on to state:

> [N]othing in today's decision necessarily dooms such efforts by state legislatures to protect child witnesses. Initially, many such procedures may raise no substantial Confrontation Clause problem since they involve testimony in the presence of the defendant. At 2804.

The concurring justices carefully pointed out their disagreement with any suggestion in the majority opinion that a "face-to-face" confrontation right in all cases was required. They stated that the protection of child witnesses is an important public policy and thus fulfilled the exception criteria referred to by Justice Scalia. They agreed with the Scalia opinion that more than a generalized legislative finding of necessity—as urged to be sufficient by the State of Iowa—however, was required, "[b]ut if a court makes a case-specific finding of necessity [citing statutes] . . . our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses. . . . nothing in the Court's opinion conflicts with this approach . . .." At 2805.

Thus, in view of the dissenting opinion of Justice Blackmun, joined in by Chief Justice Rehnquist, and of the concurring opinion referred to above, it appears

doubtful—to the extent Justice Scalia purported to hold special arrangements to protect child witnesses or videotaped depositions impermissible because not face-to-face in the presence of the factfinder—that he spoke for a majority of the Court. While the Court's mandate is clear, the majority holding is not.[3]

What we can conclude, however, is that Justice Scalia recognized that exceptions to "face-to-face" confrontation may exist in certain particularized cases supported by specific proper findings. He refers to trauma to a child witness as being a possibly appropriate public-policy exception. It should also be noted that Justice Scalia, although rather acerbic in his rejoinder to the dissent, did not dispute the interpretation placed upon his opinion by the concurring justices. While the sweep of the *Coy* case is problematic, we can, with confidence, conclude that, although generalized legislative policy will not justify special procedures to protect a child witness from trauma, exceptions may be recognized when there are case-specific and witness-specific findings of necessity.[4] Nevertheless, the "majority" opinion of Justice Scalia left for "another day" (at 2803) the question of whether any exceptions to "face-to-face" confrontation exist.

While the Supreme Court, in the absence of findings justifying an exception, struck down the particular procedure utilized under the aegis of the Iowa statute, we

---

[3] Justice Kennedy did not participate.

[4] It should be noted that the dissenters concluded that the availability of cross-examination and the requirement that the defendant stand face-to-face with the jury, plus the statement of legislative policy sufficed to validate the Iowa procedure. They also point out that, in their view, a witness should be seen by the jury, but that there is no requirement that a witness view the defendant. At 2805 ff.

conclude that it did not necessarily rule out that procedure or other procedures intended to implement the same public policy. Indeed, when the opinions of Justices O'Connor, White, Blackmun, and Rehnquist are coupled with the open-ended language of Justice Scalia in reference to particularized findings in particular cases, *Coy* appears to give a reasonably clear imprimatur to the utilization of unusual procedures when found to be necessary to protect child witnesses from the trauma of usual courtroom testimony.

We conclude then that, despite the language of Justice Scalia, the majority of the Court, among whom Justice Scalia must be numbered, recognize that there may be exceptions to "face-to-face" confrontation in instances where particularized findings are made in fact-specific circumstances concerning a witness. The necessity that must be found is that special procedures must be adopted to protect a particular witness from trauma.[5]

In light of *Coy,* we evaluate our original holding and opinion in *Thomas.*

---

[5]While we do not glean the meaning of decisions of Supreme Court Justices by their out-of-court utterances, it is interesting to note Justice Scalia's statement in an address to the University of Cincinnati Law School on September 16, 1988, that appears to capsulize his understanding of *Coy.* He said:

> Last Term we decided a case, *Coy v. Iowa,* in which, at the trial of a man accused of taking indecent liberties with two young girls, the girls were permitted to testify separated from the defendant by a screen which prevented them from seeing him. We held that, at least absent a specific finding that these particular witnesses needed such protection, this procedure violated that provision of the Sixth Amendment that assures a criminal defendant the right 'to be confronted with the witnesses against him.' Scalia, *Originalism: The Lesser Evil,* University of Cincinnati Law Rev., Vol. 57, No. 3, 849, 855 (1989).

The victim in *Thomas* was an eight-year-old girl, who the jury found was repeatedly assaulted by the defendant—orally, vaginally, and anally—while she was in the baby-sitting custody of the defendant. The victim, C.F., testified at defendant Thomas' preliminary hearing before Judge Frank Crivello. Thomas was present during the hearing in full view of the eight-year-old child. Although a child-abuse counsellor, to whom C.F. had previously told her story, sat near her, C.F. initially was unable to answer any questions about the alleged assault or about Thomas. She covered her face when asked about him. Her mother then volunteered to let C.F. sit on her lap while the questioning continued. This, Judge Crivello allowed without objection by the defendant.

Thereafter, C.F. was able to respond to some of the questions asked. Our reading of the record of the preliminary examination shows that, despite the efforts of Judge Crivello and C.F.'s mother, C.F. had great difficulty in testifying. At the outset of the preliminary examination, Judge Crivello attempted to put C.F. at ease. He first asked her whether she was afraid of anyone in the courtroom, including the defendant. She shook her head from side to side apparently indicating that she was not afraid. The examination thereafter proceeded under the questioning of an assistant district attorney.

When initially asked whether she knew Lester Thomas, she did not answer; but after she was allowed to sit on her mother's lap, she replied, "Yes," and identified him. She then responded without apparent difficulty to preliminary questions such as her address and the date of her mother's birthday. However, when Judge Crivello asked why C.F. was not looking at him when he was asking her questions, it developed that the defendant was standing in a position where to look at the judge would also require looking at the defendant. Judge Cri-

vello instructed counsel to stand between the child and the defendant.

The taking of testimony continued, but the transcript of the 18 pages of testimony thereafter at the preliminary examination reveals 16 occasions when C.F.'s mother found it necessary to reassure C.F. or to restate questions to enable C.F. to answer.[6] Throughout the questioning, Judge Crivello found it necessary to reassure C.F. and to tell her not to be afraid. Upon the motion of defense counsel to dismiss the complaint for lack of probable cause, the judge appeared to have some difficulty in binding over the defendant on the basis of the evidence elicited, but he did so on the rationale that the "Supreme Court encourages allowance of a great deal of latitude in this type of case."[7]

---

[6] The following interchange demonstrates one of the instances of difficulty in the course of the preliminary examination:

Q.   Now, C—, while you were at Pearline's house did Lester ever touch you at all?

MRS. F.: Tell him, 'yes' or 'no'. 'Yes' or 'no' say in the microphone 'yes' or 'no'.

MR. LANDGRAF: Are you going to say 'yes' or 'no'?

MRS. F.: Say it. Say 'yes' or 'no'. They are taking their time. Say 'yes' or 'no' so we can get it over with. Then you wouldn't have to go through this no more. Say 'yes' or 'no'. You know how to spell 'yes' or 'no'. Do you have a pencil and paper she can just write 'yes' or 'no' and show you.

THE COURT: No, that wouldn't be satisfactory I am afraid.

MRS. F.: 'Yes' or 'no'. Say it. Nobody is going to hurt you, C—. Say 'yes' or 'no'.

THE WITNESS: Yes.

MRS. F.: What did you say?

THE WITNESS: Yes.

MRS. F.: Say it in there. Say it. Please for me, answer the question.

[7] Perhaps the judge was referring to such cases as *State v. Friedrich*, 135 Wis. 2d 1, 19–20, 398 N.W.2d 763 (1987), which

Because of the difficulty at the preliminary examination, the prosecution moved to have a videotaped deposition of C.F. under circumstances where the child could not see the defendant.

As our original opinion pointed out, after the bindover for trial, the state asked Judge Laurence Gram for a deposition under the provisions of sec. 967.04(7)(a)1, Stats.:

> **967.04 Depositions in criminal proceedings.**
>
> (7)(a) In any criminal prosecution or any proceeding under ch. 48, any party may move the court to order the taking of a videotaped deposition of a child who has been or is likely to be called as a witness. Upon notice and hearing, the court may issue an order for such a deposition if the trial or hearing in which the child may be called will commence:
>
> 1. Prior to the child's 12th birthday; . . .

The state at the hearing on its motion contended that the statute was fully satisfied because the trial was to commence prior to C.F.'s twelfth birthday. The state, however, did not rely solely on the statutory language but set forth additional reasons why the testimony of C.F. should be video-taped. These reasons were based on factual assertions, none of which were disputed by the defendant. The state asserted in its motion:

> (a) the child has been able to verbalize the events of sexual assault allegedly occurring at the hands of the defendant in office conferences;

---

permit a greater latitude in the admission of evidence in respect to prior sex crime offenses involving children. The question of whether there is a reduced evidentiary burden on the state to demonstrate probable cause for a bindover is not an issue in the present case.

(b)   during said office conferences, through the use of anatomically correct dolls, the child has easily verbalized the incidents occurring to her without the assistance and support of any family member or friend, including the child's mother.

(c)   according to police reports filed in connection with this matter, C— has stated that the defendant told her that, if she told anyone about the sexual assaults, he would 'whip' her. C— has indicated that she is afraid of the defendant, stating that he has in fact hit her on the legs with an extension cord and a belt because she was 'kicking' the defendant [when] he was on top of her.

(d)   the child testified at the preliminary hearing and was substantially unable to recount what the defendant had allegedly done to her while the defendant was in the same room. With the assistance of her mother and while testifying from her mother's lap, the child was able to indicate what the defendant had done to her.

(e)   a videotaped deposition with proper spatial arrangements made, will minimize or eliminate the trauma to the child without any prejudice to the defendant.

Defense counsel objected on the grounds that the use of videotaped testimony would seriously impair Thomas' right of confrontation when the child witness was available to testify and had in fact testified at the preliminary examination.[8] Defense counsel conceded, however, that case-law authority supported the position that videotaped testimony might be appropriate if there were a showing that the witness would be "severely traumatized." Defense counsel asked that the court exercise its discretion to not allow videotaped testimony.

---

[8] It was only to this extent the defense disputed the state's assertion of facts.

The district attorney responded, arguing that the child was "terrified" at the preliminary examination, that her appearance so traumatized her that "she was unable to render her version of the facts."

Judge Gram exercised his discretion to allow videotaping after he examined the transcript of the preliminary examination. He "observe[d] from the transcript that there was some considerable difficulty as far as having the witness testify." He rejected the state's argument that the fact that the child was under the age of twelve in itself justified videotaped testimony. He concluded that the decision was a discretionary one, but a discretion that must be guided by "standards."

In exercising his discretion, he pointed out that the witness was of tender years—a little over eight—and that she had been severely assaulted. He took judicial notice of other cases in which he had been involved where child witnesses who had been the subject of sexual assault were traumatized by being obliged to testify or were unable to testify in the presence of the alleged assailant. He used these cases to illustrate the problems that the legislative policy of sec. 967.04, Stats., sought to alleviate. He specifically concluded that the procedure sought was appropriate here, saying, "if there's ever a case where . . . this type of procedure is justified, I think it's here." He granted the state's motion.

In our original opinion, we stated (at 890) that the language of the statute, sec. 967.04(7)(a), Stats., that a court "may" issue an order for the videotaping, required a court to exercise discretion before determining whether a videotaped deposition is necessary. We stated that this entailed a finding by the court "that the purpose of the statute—the protection of child-witnesses from further traumatization by the legal process—will be served by

taking the videotaped deposition of the child." At 890–91.

Thus, there appears to be no doubt whatsoever that *Thomas* accurately adumbrated the criteria or standards that *Coy* appears to set for allowing an exception to the face-to-face confrontation at trial: That a special procedure may be necessary to protect the child witness from the trauma of courtroom testimony, but there must be findings appropriate to the particular witness and the particular circumstances that support the necessity of a special procedure, and that an exception cannot rest solely on a generalized legislative policy.

There is no doubt that Judge Gram exercised his discretion in the manner subsequently approved in *Thomas,* and confirmed as a matter of law by *Coy.*

The exercise of discretion and the review of a discretionary determination is explicated by *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). Discretion can be exercised only if the proper legal standards are employed and there is a demonstrated process of reasoning pertinent to the issue at hand based upon facts of record. Here, Judge Gram recognized that it would be improper to rely exclusively on the legislative declaration in respect to videotaping the depositions of children younger than twelve. Instead, he concluded, there should be a demonstrated reasonable basis under the facts of the particular case in respect to the particular witness before the videotaping exception could be recognized. Thus, Judge Gram exercised his discretion in accordance with a proper rule of law—required by *Coy*—that the legislative policy of sec. 967.04, Stats., was not sufficient but must be augmented with the demonstrated use of the facts in respect to the particular witness.

387

The facts upon which the court relied for the exercise of its discretion are set forth in *Thomas* at 891 and have been reiterated above. We conclude that in themselves these facts, upon which the trial court relied, constituted a sufficient basis for the exercise of judicial discretion in a manner that was reasonable under all the circumstances and in light of the legal standards of *Coy*. It is also the duty of an appellate court to support the exercise of discretion whenever the facts of record supply an *ab initio* discretionary determination supporting the decision of the trial judge. We find such additional facts in the motion of the district attorney at the proceedings that led to the order for the videotaping but were not specifically referred to by Judge Gram. To recapitulate them: The child had no difficulty in verbalizing her assaults when the defendant was not present, but clearly did have difficulty at the preliminary examination in the presence of the defendant. Also, she stated that she was afraid of the defendant because he had whipped her with an extension cord and belt and he had threatened to whip her if she told anyone of the sexual assaults. A specific representation was made that the use of the videotape would "minimize or eliminate the trauma to the child."

Applying the usual standard in reviewing the exercise of discretion *(McCleary, supra)*, we conclude that the facts of record support the decision and that the stated rationale of the judge in granting the motion comports with the *Coy* standard requiring findings not relying solely upon a legislative declaration but rather upon facts specific to the particular defendant which demonstrate that, without the special procedures, further traumatization of a vulnerable child witness would likely result. In light of the record, we conclude that the trial judge found, in the appropriate exercise of his discretion,

388

that videotaped testimony of C.F. was necessary in the circumstances. The procedures were consistent with those indicated to be appropriate under *Coy.*

In addition to ordering the videotaping of C.F.'s testimony, Judge Gram ordered that, during the videotaping session, a screen be placed between the defendant and C.F. so C.F. could not see the defendant. However, the defendant was present in the same room and could see C.F. on a television monitor as she testified, and he was able to consult with his counsel as the taping progressed. Additionally, C.F. was in full view of the defendant's counsel, who made numerous objections during the direct examination of C.F. and also had full opportunity to cross-examine C.F. and did exercise that opportunity.

The jury, however, never saw the screen when it viewed the video testimony. All the jury saw was the swearing-in procedure, the questioning by the judge, prosecutor, and defense counsel, and the video pictures of C.F. as she was being questioned. Hence, there could be no prejudice as the result of using the screen at the taping session, because the jury never viewed the defendant as being walled off from the other participants. The screen was not visible in the portion of the tape shown to the jury. The judge appropriately told the jury that "Lester Thomas was present, but outside the view of the witness."

As the state's motion and the record demonstrate, the arrangement for the screen was an integral portion of the state's request for videotaped testimony and was encompassed within the general request for the pretrial deposition. The statute, sec. 967.04(8)(b)7, which permits videotaping, also requires the trial judge to "supervise the spatial arrangements of the room." This was a

part of the order the prosecutor sought from Judge Gram that resulted in the use of the screen. The same exception to face-to-face confrontation referred to in *Coy* is equally applicable to the screen used in this case. We validate the use of the screen because its use was justified by the same findings of fact and determination of necessity that permitted the exception to face-to-face confrontation and allowed videotaped testimony.

*Coy* also involved the use of a screen. However, the effect of the screen on the rights of Coy was never discussed by Justice Scalia, because the outcome of the case, in the absence of specific findings, hinged on the failure to have face-to-face confrontation. It appears, however, that the objection to the screen by the defendant in *Coy* also rested on due-process grounds, because its use during trial before the jury was asserted to be "inherently prejudicial." In the instant case, as we have noted, there is nothing in the video record that showed the jury that Thomas was screened off from the rest of the participants in the taping session. Thus, the situation is not at all like that in *Coy*, where the screen might well be a constant reminder to the jury of the defendant's special status. However, even in *Coy*, the justices who discussed the screen in due-process terms held its use not to be "inherently prejudicial." At 2800. We consider their reasoning persuasive. The dissenters, Justice Blackmun and Chief Justice Rehnquist, relying on *Estes v. Texas*, 381 U.S. 532, 542–543 (1965), stated that questions of inherent prejudice arise when " 'a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process.' " At 2810. The pertinent question in respect to the courtroom arrangement is whether " 'an unacceptable risk is presented of impermissible factors

coming into play,' which might erode the presumption of innocence." *Coy,* dissent, at 2810.

The dissenters point out that such procedures are permissible if they further an essential state interest. Thus, a procedure utilizing a screen may be justified, even as the videotaping of the testimony was justified, because an essential state interest was at stake, *i.e.,* preventing further traumatization of child witnesses.

However, even in the absence of that justification, the dissenters pointed out that having a screen separating the accused from one of the witnesses does not indicate that the defendant is deemed guilty.

> A screen is not the sort of trapping that generally is associated with those who have been convicted. It is therefore unlikely that the use of the screen had a subconscious effect on the jury's attitude toward appellant. *Coy* dissent, at 2810.[9]

An additional point is argued with vehemence by the defendant on this reconsideration, that is, that the witness must be "unavailable" in order to use the hearsay evidence of testimonial out-of-court utterances. We believe this argument reveals a misconception of our rationale in *Thomas.* It was simply that the testimony was not hearsay. It was in-court testimony.[10] We stated

---

[9] The dissenters pointed out that the *Coy* trial judge advised the jury that no inferences should be drawn from the presence of the screen. While the record indicates that the jury in the instant case never saw the screen in the course of their video viewing, it would clearly be appropriate to give the similar advice to a jury in cases where a screen is visible, either in a courtroom setting or in the videotape of a witness.

[10] Sec. 908.01(3), Stats., defines hearsay as "a statement, *other than one made by the declarant while testifying at the trial* or hearing, offered in evidence to prove the truth of the matter

in *Thomas* at 890, that the videotaped testimony was the functional equivalent to live in-court testimony and, therefore, unavailability was not required, and that all the essential protections of the Confrontation Clause were provided—cross-examination, observation of witness demeanor, and testimony under oath—conditioned, of course, in the instant case on the necessity of the special procedure to prevent further traumatization of a sexually abused child.

The language of Chief Justice Ellen Ash Peters of Connecticut in addressing the same question is convincing. She wrote for the court in *State of Connecticut v. Jarzbek*, 204 Conn. 683, 696–97, 529 A.2d 1245 (1987):

> Like ordinary courtroom testimony, the testimony of the minor victim in this case was videotaped at a hearing before the trial judge, held in a modified courtroom, and conducted specifically for the purpose of preserving the witness's testimony for trial. Moreover, both the state and the defendant had a full opportunity to examine and cross-examine the witness at the hearing. *Kentucky v. Stincer*, supra, 4903; cf. *Pointer v. Texas*, supra, 406–407; *Barber v. Page*, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968). We agree with the state that the circumstances surrounding the taking of the minor victim's testimony make it inherently more reliable than the out-of-court declarations characterized as hearsay. Rather than view the videotaped testimony as hearsay, we therefore consider it to be the functional equivalent of testimony in court. *Commonwealth v. Willis*, supra, 228; note, 'The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,' 98 Harv. L. Rev. 806, 823 (1985). Con-

asserted." (Emphasis supplied.) As we view the statement of C.F., under the procedures employed here, the statement was made "at the trial."

trary to the defendant's claim, the videotaped testimony is therefore not inadmissible simply because it does not fall within any of the established exceptions to the hearsay rule.

It seems clear that this "in-court testimony" need not meet the test of unavailability, for the witness is available *in court. Coy* never suggested that "unavailability" is a burden to be assumed by the state in addition to the burden in respect to particularized findings.[11]

We conclude that the *Thomas* opinion was remarkably prescient. It foreshadowed the confrontational-exception tests posited in *Coy. Thomas* and *Coy* both require that there be individualized findings that particular witnesses need special protection from further traumatization (see *Coy* at 2803; *Thomas* at 889–90) and that the state or the proponent of the witness must assume the burden of so showing.

Our reconsideration, including a complete review of the record, taped deposition, and additional oral argument, reveals that the trial judge properly exercised his discretion to require a specific showing that special treatment under sec. 967.04, Stats., was necessary in respect to C.F. The exercise of his discretion was appropriate. He ordered the taped video testimony only after considering the various facts that demonstrated the necessity of the video testimony. The facts upon which he based his decision are explicitly of record; his decision

---

[11] The question of "availability" did not arise in *Coy,* because the abused witnesses were in court and testified contemporaneously with the conduct of the proceedings before the jury. It should be noted that the concurring justices, who referred to various kinds of devices to protect traumatized witnesses, gave no indication that "unavailability" need be shown where an appropriate predicate for an exception to face-to-face confrontation had been demonstrated.

amounted to findings that supported the decision to permit the videotaping of the abused child's testimony. While in the future it is to be expected that trial judges will be able to set forth their findings with greater precision, we conclude that the findings of Judge Gram are sufficient in view of the underlying record, of which he clearly took cognizance. The trial judge is to be commended for his rejection of total reliance on legislative policy declared in the statute and for insisting upon the exercise of discretion based upon standards that demonstrated the need for the special protection of C.F. We see no need to modify any of the language of *Thomas*. We confirm it in its entirety and supplement it herein only to the extent that the decision of the United States Supreme Court furnishes a gloss to, and a confirmation of, our prior decision.

*By the Court.*—Reconsideration denied; prior opinion confirmed and supplemented in light of *Coy v. Iowa.*

SHIRLEY S. ABRAHAMSON, J. (concurring). This reconsideration of *State v. Thomas,* 144 Wis. 2d 876, 425 N.W.2d 641 (1988) *(Thomas I)*, results from the United States Supreme Court's decision in *Coy v. Iowa,* 108 S. Ct. 2798 (1988).

While I vote with the majority in its ultimate disposition of this case, I write separately because I do not agree with several of the majority opinion's conclusions. First, I do not agree with the majority's conclusion that the standards set forth in *Thomas I* and *Coy* are necessarily the same. I think that the majority opinion has restated *Thomas I* in terms of *Coy* and that the opinion on reconsideration *(Thomas II)* in effect supersedes *Thomas I*. Second, I do not agree with the majority's conclusion (at 387–388) that the circuit court's reasoning supporting its exercise of discretion satisfied the

requirements set forth in *Coy.* Finally, I think the majority opinion erroneously jumbles together the hearsay and confrontation issues that arise from the use of videotaped testimony.

In *Coy,* the child testified in the courtroom, before the factfinders, with a screen between her and defendant. *Coy* thus speaks directly to the requirements of the confrontation clause regarding admissibility of statements made by a witness at trial.

In *Thomas* the child testified outside the courtroom, before a judge (not the jury), with a screen between her and the defendant, and with counsel for both parties questioning the child in accordance with sec. 967.04(7)–(10). At the *Thomas* trial, the videotape of the child's testimony was shown to the jury in lieu of her live testimony. *Thomas* thus involves the admissibility of statements by a witness who does not appear live at trial.

I conclude, as does the majority, that both screen and videotape procedures implicate the central issue in *Coy*—when do special protective procedures for witnesses violate the core guarantee of the Confrontation Clause, *i.e.,* the defendant's right to face a witness at trial. Although the majority subscribes to an undefined functional equivalency theory respecting videotape and live testimony at trial, it apparently concludes that videotape per se requires the same threshold showing of necessity as other procedures which the Supreme Court recognizes as constituting a significant interference with the defendants' "core" confrontation rights.

*Thomas I.* The majority opinion concludes that there is "no need to modify any of the language of *Thomas* [*I*]. We confirm it in its entirety ." At 394. The 23-page *Thomas II* opinion on reconsideration is characterized as "explanatory comments" (at 376) and as a supplement (at 394) to the original opinion. I agree with

the state's suggestion that this court, for the sake of clarity, should issue an opinion which supercedes the *Thomas I* opinion. People should not have to read two lengthy opinions and try to figure out which one controls. I think the tests in *Thomas I* and *II* are stated differently. Compare, *e.g.,* majority opinion at 386–387 (particularized findings) and 144 Wis. 2d at 892–93 balancing formula based on "best interest of the child."

When I read the two *Thomas* opinions, I believe, despite the majority opinion's protestations to the contrary, that *Thomas II* has, for all intents and purposes, superseded *Thomas I.*

*The Coy Case.* The *Coy* majority concluded that the irreducible literal meaning of the sixth amendment's confrontation clause is a guarantee to the defendant of a face-to-face meeting with witnesses appearing before the trier of fact at trial. 108 S. Ct. at 2800. See also *id.* at 2803.

The *Coy* majority recognized, without acknowledging the constitutionality of particular exceptions,[1] that whatever exception there may be to the "core" right established in the confrontation clause would have to meet at least two threshold requirements that the Court has previously recognized as applying to "exceptions from the normal implications of the Confrontation Clause." 108 S. Ct. at 2803.

---

[1] Justice O'Connor's concurring opinion in *Coy* rejected any suggestion in the Court's opinion that the "core" of the Confrontation Clause is absolute. Justice O'Connor's opinion emphasized that "if a court makes a case-specific finding of necessity, as is required by a number of state statutes . . . our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses." 108 S. Ct. at 2805.

First, any exception "would surely be allowed only when necessary to further an important public policy." *Id.* Second, "any conceivable exception" would require "individualized findings that these particular witnesses needed special protection." *Id.*[2]

The majority opinion assumes that both the videotape and the screen must, at a minimum, meet these threshold requirements set forth in *Coy.* But see p. 377 *supra* and pp. 382–387 *infra.*

*Public Policy Interest In Protecting Child Witnesses.* The first requirement set forth in *Coy* is that any exception to the core right in the confrontation clause must further an important public policy. The Wisconsin legislature and this court have recognized that a child witness may suffer special trauma from exposure to typical trial procedures. Both the legislature and this court have concluded that child witnesses may need additional consideration and different procedures than those usually afforded to adults to protect the well-being of the child witness and to enable the child to give effective, truthful testimony. Sec. 967.04(7), Stats. 1987–88; *State v. Gilbert,* 109 Wis. 2d 501, 517–518, 326 N.W.2d 744 (1982). See also *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607 (1982).

I conclude that the state has a compelling interest in safeguarding the well-being of a child witness and in enabling the child witness to give truthful testimony.

Thus, an exception to the constitutional requirement of face-to-face testimony before the factfinder may be justified when there is substantial likelihood that the child witness will suffer significant psychological or emo-

---

[2] For discussions of *Coy,* see Forman, *To Keep the Balance True: The Case of Coy v. Iowa,* 40 Hastings L.J. 437 (1989); *The Supreme Court, 1987 Term, Leading Cases,* 102 Harv. L. Rev. 143, 151–161 (1988).

tional trauma if the child testifies in the presence of the defendant at trial.

Or an exception may be justified under the constitution when there is substantial likelihood that the child witness will not be able to give effective, truthful testimony in the presence of the defendant at trial, thereby undermining the purpose of confrontation as an aid to truth-finding. *Cf. Coy* at 2809 (Blackmun, J. dissenting).

I would also conclude that, under *Coy*, a child's mere nervousness, excitement and reluctance to testify in the courtroom or before the defendant are not sufficient to justify an exception to face-to-face testimony before the factfinder.

*Individualized Finding of Necessity for Special Protection.* The second requirement set forth in *Coy*, and the essence of the Court's holding in that case, is that the trial court must make specific and particularized findings, grounded in the record, concerning the particular child's need to be excused from testifying face-to-face with the defendant at trial. *Coy* clearly states that generalized, legislatively imposed presumptions about traumatization of the child witness are an insufficient basis upon which a court may premise an exception to the constitutional right of face-to-face confrontation before the fact-finder. 108 S. Ct. at 2803.

In *Globe Newspapers Co. v. Superior Court,* 457 U.S. 596, 607–608 (1982), the Court concluded that a trial court should consider the following factors, among others, in making a case-by-case determination in safeguarding the psychological and physical well-being of a child: the child's age, psychological maturity and understanding, the nature of the crime, the desires of the child, and the interests of the parents and relatives. Section 967.04(7)(b), Stats. 1987–88, sets forth additional factors that might guide the circuit court in Wisconsin. I

think that the individualized finding requirement in *Coy* might also be read as implying that the circuit court should explain, on the record, why it has ruled out alternatives that are less intrusive on the defendant's constitutional confrontation rights.

In *Thomas,* the only evidence from which the circuit court could determine the necessity of using the screen or the videotape were the state's written motion papers and the transcript of the child's testimony at the preliminary examination. There was no testimony on the issue of necessity.

The circuit court decided to allow videotaping after observing that the preliminary hearing transcript revealed that the child (with the support of her mother and others) had "some considerable difficulty" testifying. The circuit court said little if anything about the need for a screen.

The circuit court apparently assumed that a videotape and screen were needed for an eight-year-old child who had been subjected to severe sexual abuse and had considerable difficulty testifying at the preliminary examination. The circuit judge also cited two past experiences with children who were unable to testify or had great difficulty doing so as the basis for his ruling to allow videotaping under the statute. Although the circuit judge did not expressly find that this child would suffer emotional trauma from testifying live in the courtroom or without a screen, the majority opinion concludes that the circuit court found the videotape and the screen were necessary to avoid further traumatization of a vulnerable child witness. Majority opinion at pp. 389, 391.

I conclude that the circuit court in this case correctly interpreted sec. 967.04 (7)(a)1 as granting it the discretion to authorize special protections for a child witness under the age of 12. I further conclude that the

transcript of the circuit court's decision to allow the videotape and the screen does not satisfy the *Coy* requirement of "individualized findings" that this particular witness needed special protection. Of course, the circuit judge did not have the benefit of *Coy*. However, I conclude that this court could not uphold the circuit court's decision in this case solely on the basis of the circuit court's findings and reasoning.

The majority opinion does not clearly establish its position on this score. The majority opinion, at pp. 387–388, 389, and 394, states that the circuit court's findings were adequate, under the standard of *Coy*, to support a determination of necessity for the videotape and screen procedures to avoid further traumatization. But the majority proceeds, at pp. 388–389, to "support" the circuit court's findings by recognizing additional facts which were not included in the circuit court's explanation of its decision.

I think that the circuit court's reasoning in this case was, for the most part, based on the kind of presumptions and generalizations the *Coy* majority struck down as inadequate. The fact that the generalizations and presumptions relied on in this case are set forth by a judge rather than by a legislature, as was the case in *Coy*, does not change the fact that they are not the kind of individualized findings required by the holding in *Coy*.

This is a meager record. I do not think the record, taken as a whole, is adequate to support a finding about the substantial likelihood of significant psychological or emotional trauma to the child from face-to-face or in-court testimony.

I do, however, conclude that the state's motion papers and the transcript of the preliminary examination can support the circuit court's discretionary determination that this particular child could not give effective testimony if she had to testify facing the defendant

400

in the courtroom. See facts recited in the majority opinion at 382–383, 388.

I agree with the majority opinion that this court can, in this case, supply the circuit court's omission. Here, we review the same paper record that the circuit court studied to reach its decision. In most cases, however, the circuit court will also rely on its impressions of witnesses. In such cases this court will not be able to supply the specific and particularized findings required by *Coy.*

*Videotaping and the Confrontation Clause.* I believe the two procedures used in the Thomas trial present separate and distinct confrontation issues. The screen placed between the child and the defendant in both *Coy* and in this case raises an issue of physical face-to-face confrontation regardless of whether the screen is used in a trial or deposition setting. Although the standards for the use of a screen as an exception to the constitution's face-to-face confrontation requirement are not settled, see discussion *supra* at pp. 377–388, the *Coy* opinion makes it clear that a physical barrier between the witness and the defendant infringes on confrontation rights.

The use of videotape per se—that is, when the defendant and witness are face-to-face but outside the presence of the factfinder—presents a different confrontation issue.[3] When a witness testifies under conditions

---

[3] For discussions of the constitutionality of admitting videotaped testimony, see Thumann, *Admitting Videotaped Testimony in Cases Involving Sexual Abuse of a Minor: A Model Statute,* 22 Colum. J. L. & Soc. Problems 489 (1989); Clark-Weintraub, *The Use of Videotaped Testimony of Victims in Cases Involving Child Sexual Abuse: A Constitutional Dilemma,* 14 Hofstra L. Rev. 261 (1985); Wixom, *Videotaping the Testimony of an Abused Child: Necessary Protection for the Child or Unwarranted Compromise of the Defendant's Constitutional*

identical to trial (before a judge and the defendant and subject to cross-examination) except that the jury is not present, it is arguable—and the state so argues in this case—that "[t]here is nothing in *Coy* to suggest that the use of a videotaped deposition itself, absent the use of a screen, would violate the confrontation clause." State's brief at 9.

*Thomas I* discussed the use of videotape per se and the screen separately and can be read as setting forth two different tests under the constitution. *Thomas II* treats the two procedures the same for constitutional purposes and applies the *Coy* test to both. Majority opinion at 389–390.

Courts and commentators appear to be divided on the question of whether and to what extent the use of videotape per se violates confrontation rights. There is also a spectrum of opinion as to whether the use of a videotape in court should be analyzed as an evidentiary hearsay issue as well as a confrontation clause constitutional issue.[4]

---

*Rights?*, 1986 Utah L. Rev. 461; Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harv. L. Rev. 806 (1985).

[4] One observer summarizes the debate regarding the proper characterization of videotapes this way:

> Some critics have argued that videotaped testimony of a child sexual abuse victim constitutes hearsay, the admission of which violates the confrontation clause. They argue that the testimony is hearsay because it presents statements (the child's testimony) which are made out of court (wherever the videotaping session occurs) by an out-of-court declarant (the child, who ordinarily is not required to testify or appear in court) and which are offered to prove the truth of a matter asserted in the statement (that the defendant committed the crimes alleged).
>
> Other critics recognize that the trial-approximating conditions that some existing statutes require to surround videotaping sessions prevent videotaped testimony from constituting hearsay. They argue

Some view the use of the videotape at trial as hearsay evidence and as falling within one of the exceptions to the hearsay rule. The statutes authorizing the use of videotape testimony, however, do not generally make reference to the hearsay rule. Videotape is, of course, unique as hearsay because it allows the factfinder the opportunity to observe both cross-examination and the demeanor of the absent witness.

Those who classify the videotape as hearsay generally conclude that in addition to the evidentiary question, the court must also address the constitutional confrontation question. Satisfying the evidentiary hearsay rule does not, of course, automatically satisfy the constitutional confrontation requirements. Courts look to the *Ohio v. Roberts*, 448 U.S. 56 (1980), tests of reliability and unavailability to determine the constitutionality of admitting the videotape classified as hearsay. Applying the *Roberts* test, some courts and commentators apparently conclude that the trial-like procedures applied at the videotaping render the witness's testimony so reliable that unavailability is not an issue. See, *e.g., Thomas I,* 144 Wis. 2d at 890. Others conclude that the *Roberts* unavailability requirement is satisfied by a showing that the witness is likely to be significantly traumatized or incapable of effectively communicating if forced to testify at trial. See, *e.g., Wildermuth v. State,* 310 Md. 496, 530 A.2d 275, 286 (1987); *State v. Vincent,* 159 Ariz. 418, 768 P.2d 164 (1989) (en banc).

that under such statutes the videotaping session becomes a sort of trial itself, and any violation of constitutional norms which occurs during it renders the taped testimony inadmissible. Thumann, *Admitting Videotaped Testimony in Cases Involving Sexual Abuse of a Minor: A Model Statute,* 22 Colum. J. L. & Soc. Prob. 488, 535 (1989).

Others, like the majority in its *Thomas II* opinion, conclude that the videotape testimony is not hearsay because it enables cross-examination, observation of witness demeanor, and testimony under oath. At 391–392. The majority characterizes the videotape as a statement "at trial" (at 391–392 and as the "functional equivalent" of live, in-court testimony. At 392.[5]

The majority then concludes, relying on *State v. Jarzbek*, 204 Conn. 683, 529 A.2d 1245, 1252 (1987), that because the videotape is not hearsay, the state need not prove unavailability. As I read his brief, the defendant is arguing that an unavailability test is necessary to determine the constitutionality of using videotaped testimony, whether or not the videotape is classified as hearsay. The majority opinion incorrectly relies on the *Jarzbek* case (see majority opinion at 392) in deciding the constitutional question whether unavailability must be proven before videotaped testimony is admissible under the confrontation clause. The Connecticut Supreme Court concluded in *Jarzbek*, solely for purposes of classifying videotape within the rules of evidence, that videotaped testimony is not hearsay, but rather the functional equivalent of testimony in court. The *Jarzbek* court was not addressing the constitutional right of confrontation when it was discussing functional equivalence. In *Jarzbek*, the defendant had withdrawn a claim that his constitutional right of confrontation was vio-

---

[5] The majority opinion says that the witness is available in court. At 393. Perhaps the child may be deemed available for purposes of the evidentiary hearsay issue but that does not mean that she is necessarily available in a sense that satisfies the requirements of the constitution. For that matter the statute provides that if the videotaped testimony is used, the child witness may not be called before the factfinder except under specified exceptional circumstances. Sec. 967.04(10) Stats. 1987–88.

lated by virtue of the fact that the jury was not in the room observing the witness during her testimony. 529 A.2d at 1248, n. 5.

An unanswered question in the majority opinion, of course, is whether there is a legally significant distinction between the *Coy* tests, which the majority opinion applies to videotape per se, and the unavailability requirement established in *Ohio v. Roberts.* If the record meets the *Coy* particularized finding test, it arguably may also meet the definition of constitutional unavailability articulated in more recent cases involving child witnesses. See, *e.g., State v. Vincent,* 768 P.2d at 161–64.

Finally, I note that the majority does not respond to the defendant's argument that the videotape in this case violates confrontational rights because it did not allow the fact-finder a fair opportunity to observe the witness's demeanor. The defendant argues that, because the camera remained only on the child during her testimony, the jury was unable to view the interaction between the witness and others who were present. The majority opinion does not acknowledge the unavoidable differences between live testimony and testimony on a screen. Videotape is indisputably superior, for purposes of observing demeanor, to a written transcript. But viewing a videotape is different from viewing a person live. The camera selects and comments on what it sees, thereby affecting the juror's impressions and ability to determine credibility. For discussion of this issue, see *Commonwealth v. Bergstrom,* 402 Mass. 534, 524 N.E.2d 366, 373 (1988); Armstrong, *The Criminal Videotape Trial: Serious Constitutional Questions,* 55 Or. L. Rev. 567, 574–75 (1976).

For the reasons set forth, I join the court's mandate but not the majority opinion.