# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 9, 2011

141659

PEOPLE OF THE STATE OF MICHIGAN,
   Plaintiff-Appellee,

v

RONALD CARL ROSE,
   Defendant-Appellant.

_____/

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

SC: 141659
COA: 290936
Allegan CC: 07-015359-FC

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of February 2, 2011. The application for leave to appeal the July 1, 2010 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

MARILYN KELLY, J. (*dissenting*).

I dissent from the order vacating our February 2, 2011 order granting leave to appeal and denying defendant's application for leave to appeal. The trial court violated defendant's due process right to be presumed innocent when it permitted a child witness to testify behind a witness screen that prevented her from viewing defendant. The screen branded defendant with "an unmistakable mask of guilt"[1] by suggesting to the jury that the witness had a good reason to fear viewing defendant; namely, that defendant had abused her. This error was compounded when the trial court gave no instruction to the jury directing it not to draw any inference adverse to defendant from the use of the screen. Accordingly, I would reverse the Court of Appeals judgment and remand the case for a new trial.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged with four counts of first-degree criminal sexual conduct[2] and two counts of distributing obscene material to minors[3] based on allegations made by

---

[1] *Holbrook v Flynn*, 475 US 560, 571; 106 S Ct 1340; 89 L Ed 2d 525 (1986).

[2] MCL 750.520b.

[3] MCL 722.675.

two children, JB and RB.[4]  Both at the preliminary examination and at trial, the court allowed the prosecutor to place a protective screen between JB and defendant while JB was testifying.  Defendant and defense counsel could see JB through the screen, but the screen prevented JB from seeing defendant.  The screen did not prevent the jurors, judge, or most of the courtroom audience from seeing JB or prevent her from viewing them.  Defense counsel objected to the screen but offered no alternative method for presenting JB's testimony.  RB also testified but no screen was used.  The jury convicted defendant as charged.

The Court of Appeals affirmed defendant's convictions.[5]  It noted that use of a screen was not expressly permitted under MCL 600.2163a, which provides special procedures for presenting child witness testimony in certain cases.  However, the panel held that the trial court could allow a screen pursuant to MRE 611(a), which gives the court authority to control the "mode and order" of interrogating witnesses.

The Court of Appeals also held that the use of the screen in this case did not violate defendant's constitutional right to confront witnesses.[6]  The United States Supreme Court has recognized that a defendant's right to confrontation may bow to a compelling state interest, which includes "safeguarding the physical and psychological well-being of a minor."[7]  The trial court must make a "case-specific" finding that the procedure is necessary to further that state interest.[8]  Here, the Court of Appeals concluded that the trial court made sufficient findings that the screen was necessary to protect JB.  It relied on the trial court's conclusion that there was a "high likelihood" that JB would suffer psychological damage if forced to testify without the screen.[9]

---

[4] Defendant was initially also charged with one count of second-degree criminal sexual conduct and one count of accosting a child for immoral purposes.  However, the prosecutor dismissed those charges at the close of her proofs because the facts necessary to sustain those charges had not been presented.

[5] *People v Rose*, 289 Mich App 499 (2010).

[6] US Const, Am VI; Const 1963, art 1, § 20.

[7] *Maryland v Craig*, 497 US 836, 852-853; 110 S Ct 3157, 111 L Ed 2d 666 (1990), quoting *Osborne v Ohio*, 495 US 103, 109; 110 S Ct 1691; 109 L Ed 2d 98 (1990).

[8] *Craig*, 497 US at 855.

[9] *Rose*, 289 Mich App at 516.

The Court of Appeals next rejected defendant's argument that the screen violated his right to due process by infringing on the presumption of innocence. The panel concluded that, unlike prison garb or shackles, the screen was not the type of device that would brand defendant with a mark of guilt. Thus, it held that use of the screen was not inherently prejudicial.

Moreover, the Court of Appeals reasoned that the jury could draw several inferences about why the witness was screened that would not be prejudicial to defendant. Those alleged non-prejudicial inferences included (1) the witness was afraid to view defendant because she was not being truthful, (2) the screen was being used to calm the witness's anxiety about appearing as a witness, and (3) as a general rule, child witnesses accusing a defendant of harm are fearful of the defendant.

Finally, the Court of Appeals concluded that, even if the screen was inherently prejudicial, its use was necessary to further an essential state interest. Therefore, it held that defendant's due process claim was without merit.

## ANALYSIS

The United States Supreme Court has not addressed whether the use of a witness screen violates a defendant's due process right to a fair trial.[10] However, that Court has ruled that certain procedures are so inherently prejudicial that they are generally not permitted at trial.[11] The test for whether a particular procedure is inherently prejudicial is whether there is an "unacceptable risk that impermissible factors will come into play."[12] Whether a given procedure creates such an unacceptable risk turns largely on whether there is a "wider range of inferences that a juror might reasonably draw" from the procedure other than to brand defendant "with an unmistakable mark of guilt."[13]

---

[10] *Coy v Iowa*, 487 US 1012, 1022; 108 S Ct 2798; 101 L Ed 2d 857 (1988) ("We find it unnecessary to reach appellant's due process claim."); see *id*. at 1034 (Blackmun, J., dissenting) ("Appellant also argues that the use of the screening device was 'inherently prejudicial' and therefore violated his right to due process of law. The Court does not reach this question . . . .").

[11] See *Illinois v Allen*, 397 US 337, 344; 90 S Ct 1057; 25 L Ed 2d 353 (1970) ("no person should be tried while shackled and gagged except as a last resort"); *Estelle v Williams*, 425 US 501, 504-505; 96 S Ct 1691; 48 L Ed 2d 126 (1976) (it violates a defendant's due process right to a fair trial to compel a defendant to wear identifiable prison garb during trial).

[12] *Holbrook*, 475 US at 570, quoting *Williams*, 425 US at 505.

[13] *Id*. at 569, 571.

I conclude that the Court of Appeals erred in rejecting defendant's argument that the witness screen violated his right to due process by impinging on the presumption of innocence.[14] The only inference that a reasonable juror could draw from the use of the witness screen is that JB was afraid of defendant because he abused her. The Court of Appeals, the prosecutor, and amicus offered several alternative inferences that a juror might draw from the use of the screen. None of them withstands scrutiny.

First, the Court of Appeals stated that a reasonable juror might conclude that the child witness is being screened because she fears to look upon the defendant because she is not testifying truthfully. No reasonable juror could so conclude. Courts are not in the habit of protecting people who proffer perjured testimony. By allowing the screen to be placed between the witness and defendant, the court highlighted the witness's apparent fear of directly facing defendant. Permitting the screen sent the jury the message that the court deemed the witness to be worthy of protection from the defendant.

Second, the Court of Appeals, the prosecutor, and amicus claim that a juror could reasonably infer from the screen that the witness is afraid of testifying "generally." This inference is more unreasonable than the first. The screen's only function in this case was to block JB's view of the defendant. She could still see the judge, the jury, the attorneys as they questioned her, and the rest of the courtroom. It is hardly a reasonable inference

---

[14] Because I reach this conclusion, I do not address defendant's claim that the witness screen violated his constitutional right to confrontation. In addition, the screen may very well have violated defendant's *statutory* right to confrontation. MCL 763.1 provides that "[o]n the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he *shall have a right to . . . meet the witnesses who are produced against him face to face.*" (Emphasis added.)

MCL 600.2163a provides apparent exceptions to the mandatory rule in MCL 763.1 that confrontation be "face to face." However, a witness screen is not among the enumerated exceptions. Moreover, in my view, MCL 600.2163a(19), which provides that "[t]his section is in addition to other protections or procedures afforded to a witness by law or court rule[,]" cannot justify allowing the screening procedure used in this case because no Michigan statute or court rule explicitly allows it. To allow the screen pursuant to a vague rule allowing trial courts to exercise "reasonable control over the mode and order of interrogating witness[,]" MRE 611(a), as the Court of Appeals did here, vitiates the mandatory nature of MCL 763.1.

under those circumstances that the witness was afraid of testifying generally. The witness still testified in open court.

Finally, the Court of Appeals suggested that the screen was not inherently prejudicial because "anytime a child victim testifies against a defendant who is accused of harming the child victim, the jury is going to reasonably infer that the child has some fear of the defendant."[15] Implicit in this statement is the conclusion that a reasonable juror could infer that screening child witnesses in abuse cases is standard practice. This conclusion is problematic for a couple of reasons. First, it is undisputed that RB, the other child witness who testified in this case, was not screened. Second, the screen was not a permanent fixture in the courtroom and was not in place for the entire trial;[16] it was brought out only to shield JB while she testified.

The only remaining reasonable inference to be drawn from the screen is that JB was afraid to face the dangerous defendant because he had abused her. Thus, the use of the screen was inherently prejudicial.[17]

I also disagree with the Court of Appeals that, even if use of the screen was inherently prejudicial, it was justified by "an essential state interest specific to [this] trial."[18] Rather, the trial court "had available another equally effective method of protecting [the child witness] while procuring her testimony that would not have been inherently prejudicial to [defendant's] due process rights."[19] MCL 600.2163a gives trial courts numerous alternative ways of presenting child witness testimony, including

[15] *Rose*, 289 Mich App at 520.

[16] Contra MCL 600.2163a(16)(b) (allowing the courtroom to be rearranged so that the defendant is seated "as far from the witness stand as is reasonable and not directly in front of the witness stand," but requiring that the seating arrangement "shall be the same for all witnesses . . . .").

[17] It bears repeating that the trial court gave no instruction to the jury that it was to draw no inference from the use of the screen. Contra *Coy*, 487 US at 1035 (Blackmun, J., dissenting) ("[T]he trial court instructed the jury to draw no inference from the device . . . . *Given this helpful instruction*, I doubt that the jury-which we must assume to have been intelligent and capable of following instructions-drew an improper inference from the screen, and I do not see that its use was inherently prejudicial.") (Emphasis added).

[18] *Holbrook*, 475 US at 569.

[19] *State v Parker*, 276 Neb 661, 674; 757 NW2d 7 (2008).

rearranging the courtroom so that the child cannot see the defendant[20] or videotaping the child's testimony.[21] Each of these procedures, in contrast to the screen used in this case, would allow reasonable jurors to draw innocuous inferences rather than brand the defendant as guilty.[22] Thus, while the trial court allowed the screen to protect JB from trauma, it failed to "take steps" to "minimiz[e] the prejudice to [defendant]."[23]

Finally, today's order denying leave to appeal leaves Michigan among a scant minority of states that has sanctioned the use of witness screens in such a prejudicial manner. Although a few states allow the use of a screen, either by judicial decision or statute, most minimize the potential for prejudice by providing greater protection for a defendant's rights. For example, Alaska's statute allowing the use of "one-way mirrors" provides that the mirrors shall be placed so that the child does not have visual contact with the jury as well as the defendant.[24] Wisconsin courts have allowed the use of a witness screen where the child victim testifies on camera and is screened from the defendant, but the jury cannot see the screen.[25] The screening procedure used in this case had none of these protections.

## CONCLUSION

Today's order leaves intact a clearly erroneous published opinion of the Court of Appeals. Moreover, it sanctions a constitutionally defective procedure for shielding child witnesses from their accusers despite the fact that the Legislature has endorsed

---

[20] MCL 600.2163a(16)(b).

[21] MCL 600.2163a(17).

[22] For example, unlike with the screen, a juror could reasonably infer that a child is being allowed to testify via videotape because he or she is scared of the courtroom setting.

[23] *Rose*, 289 Mich App at 523.

[24] Alas Stat Ann § 12.45.046(e).

[25] *State v Thomas (Thomas II)*, 150 Wis 2d 374, 389; 442 NW2d 10 (1989) ("The jury . . . never saw the screen when it viewed the video testimony. . . . Hence, there could be no prejudice as a result of using the screen at the taping session, because the jury never viewed the defendant as being walled off from the other participants.").

other, constitutionally acceptable means of doing so. I dissent and would reverse the Court of Appeals decision and remand this case for a new trial.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 9, 2011

_____
Clerk

y1206