BOWIE, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–204–CR. Submitted on briefs September 7, 1978.—Decided October 31, 1978.*

(Also reported in 271 N.W.2d 110.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J.   Harold Ray Bowie (the defendant) was convicted of forgery (uttering) as

party to a crime contrary to secs. 943.38 (2) [1] and 939.-05,[2] Stats. On appeal Bowie asserts that the trial court committed two errors: (1) it erred in denying his motion

[1] Sec. 943.38, Stats.:

"**Forgery.** (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, may be fined not more than $5,000 or imprisoned not more than 10 years or both:

"(a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; or

"(b) A public record or a certified or authenticated copy thereof; or

"(c) An official authentication or certification of a copy of a public record; or

"(d) An official return or certificate entitled to be received as evidence of its contents.

"(2) Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, may be fined or imprisoned or both as provided in said subsection. . . ."

[2] Sec. 939.05, Stats.:

"**Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires

for a mistrial after a witness for the prosecution testified that she had received threats concerning her testimony but did not connect those threats to the defendant; and (2) it erred in adjourning the proceedings to enable the prosecution to obtain a witness. We affirm the conviction.

At trial before a jury, the prosecution's primary witness, Gwendolyn Chambers, testified that on March 14, 1965, two men, one of whom she later learned was named Harold Bowie, arrived at her house in a car. She identified the defendant as the man in the car named Harold Bowie. The other man gave her a check for $178.65 drawn on the Milwaukee Legal Services Clients Trust Account-North, signed "Daniel Taylor," and made out to Chambers; Chambers' name was typed on the check. The defendant told Chambers to cash the check and said that she and the two men would split the money three ways.

Chambers went into a National Food Store, endorsed the check at the "check window" and presented it to Edith McKnight, an employee, for cashing. She told McKnight that she worked at Milwaukee Legal Services. McKnight replied that she would have to phone Milwaukee Legal Services to see if the "Daniel Taylor" signature was authorized. At that point Chambers left the store, without the check, and returned to the men in the car. She told them what had happened, and they drove away.

At the close of the direct examination of Chambers, the prosecutor elicited the following testimony from her:

"*Q.* Miss Chambers, prior to coming to court today since this charge was issued, have you received any threats concerning your testimony?

that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

"*A.* Yes, I have.
"*Q.* What were the nature of those threats?
"*A.* The first time I went to the preliminary hearing."

Defense counsel's objection was sustained. Outside the jury's presence, the witness stated that she had been told, in an anonymous phone call before the preliminary hearing, that if she testified against the defendant, she would be "knocked off." Relatives and acquaintances had also reported the threat to her, but she did not know who had originally made the threat. The court then instructed the jury "to disregard the last question asked of the witness, whether there was any threat made to her. Entirely disregard it, please." Defense counsel's motion for a mistrial was denied.

Chambers was unable to point to any connection between the defendant and the threat, apart from the fact that fullfilment of the threat was said to turn upon her testifying against him. She was unable to say that the threat had originated from the defendant or from someone acting on his behalf. Under these circumstances, the trial court correctly ruled that Chambers' testimony regarding the threat was inadmissible.

In *Price v. State,* 37 Wis.2d 117, 130–33, 154 N.W.2d 222 (1967), *cert. denied* 391 U.S. 908 (1968), this court held admissible evidence of threats by a defendant to a co-conspirator witness. We said that "the [defendant's] threat is circumstantial evidence of consciousness of guilt and, hence, of guilt itself." *Id.* at 132. *See also* 2 Wigmore on Evidence, sec. 277, *et seq.* (3d ed. 1940).

This rationale, persuasive when the threat has been made by the defendant, does not apply to a threat unconnected to the defendant. If the attempt to suppress testimony by a threat "is made by a third person, not in the presence of a defendant or shown to have been authorized by him, it should at once be suspect as a mere

purporting attempt to suppress evidence and in truth an endeavor to prejudice the defendant before the jury in a way which he cannot rebut satisfactorily because he does not know the true identity of the pretender." *People v. Weiss*, 50 Cal.2d 535, 327 P.2d 527, 538 (1958). *See* cases cited in Annot., *Admissibility in Criminal Case, on Issue of Defendant's Guilt, of Evidence That Third Person Has Attempted to Influence a Witness Not to Testify or to Testify Falsely*, 79 A.L.R.3d 1156 (1977). In the present case, the prosecution was unable to connect the alleged threats to the defendant. Testimony regarding those threats was therefore inadmissible.

The trial court, having admonished the jury to disregard "the last question asked of the witness, whether there was any threat made to her," refused to rule that the prosecution's unwarranted injection of that testimony was an adequate basis for declaring a mistrial. The defendant argues on appeal that the court's admonition was incomplete and that the injection of this testimony was so prejudicial that even a correctly worded admonition would not cure the error. Under the facts of this case, we do not view this limited testimony of a threat, followed by the admonitory instruction, as prejudicial error requiring reversal.

The prosecutor asked the witness two questions: whether she had been threatened, and what the nature of the threats was. The court's admonition referred to "the last question asked of the witness, whether there was any threat made to her." Although the admonition could have been better phrased, there can be little doubt that the jury understood the admonition to refer to both questions asked of Chambers and both of her responses.

Chambers did not say that the defendant had made the threat; she did not indicate the purpose of the threat. Under these circumstances, we cannot conclude that the jury ignored the trial court's instruction and speculated

as to the nature of the threat and the defendant's connection with it.

It can be said, beyond a reasonable doubt, that the witness's brief and vague reference to being threatened, followed by an instruction to disregard, did not contribute in any way to the jury's finding of the defendant's guilt. In light of the facts of this case, the error was harmless under any test of harmless error. The error affected no substantial right of the defendant. *See* sec. 901.03(1), Stats.[3]

The defendant also contends that it was error for the court to grant the prosecution a continuance to allow it to produce Marilyn Dixon as a witness. The motion for continuance arose when the defendant, testifying on his own behalf, asserted that the transaction regarding the check had involved only Davis and Chambers. The prosecutor then requested the court to adjourn the cross-examination of defendant until the next day. He requested the continuance because Marilyn Dixon, a witness for the state, had not appeared that day. He said she would testify that Bowie had given her, and she had cashed, forged checks drawn on the Milwaukee Legal Services account. Only if she were to appear, would the prosecutor cross-examine Bowie concerning those checks.

---

[3] Sec. 901.03(1), Stats.:

"901.03 **Rulings on evidence. (1)** EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

"(a) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

"(b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."

The prosecutor stated to the trial court that Dixon had promised to appear for the first day of trial, but she failed to do so because of threats made to her. He admitted that she had not been served with a subpoena in time to compel her appearance on the first day. The trial court agreed to defer cross-examination of the defendant until the second day of trial. The trial court made it clear that the continuance was to be only until the next morning, at which time the cross-examination of the defendant would begin whether or not Dixon was in court.

The next morning Marilyn Dixon appeared in court. On cross-examination the defendant stated that he had never seen any checks like the one Chambers presented for cashing drawn on the Milwaukee Legal Services account. He denied having typed the name "Marilyn Dixon" as payee on four such checks, or having given the checks to Dixon, or having received any proceeds when she cashed the checks.

Marilyn Dixon testified that the defendant had given her four checks on the Milwaukee Legal Services account, three of which she cashed, and that she shared the proceeds of the checks with the defendant. She testified that she saw him type her name on one of the four checks as payee.

We have held that a motion for a continuance to obtain the attendance of witnesses is addressed to the discretion of the trial court; the exercise of that discretion will not be disturbed upon appeal except where it is clearly shown that there has been an abuse of discretion. *Angus v. State,* 76 Wis.2d 191, 195, 251 N.W.2d 28 (1977) cert. denied 434 U.S. 845 (1977). In passing upon a motion for a continuance due to the absence of a witness, the trial court should consider several factors, *e.g.,* whether the testimony of the absent witness is material, whether

the moving party has been guilty of any neglect in endeavoring to procure the attendance of the witness, and whether there is a reasonable expectation that the witness can be located. *Elam v. State*, 50 Wis.383, 389–90, 184 N.W.2d 176 (1971).

The continuance in this case allowed the production of a witness whose testimony is not challenged on appeal. Little if any burden was placed upon the defendant by the delay. Even if the prosecution was neglectful in not obtaining the witness for the first day of trial, it was reasonable under the circumstances for the trial court to grant the continuance.

As a third and distinct ground for review, the defendant asserts that the evidence shows that Chambers did not cash the Milwaukee Legal Services check. He concludes that the evidence is not sufficient to sustain the conviction of the crime of uttering. We have held that a check need not be accepted or cashed in order for the defendant's conduct to constitute the complete offense of uttering. *Little v. State*, 85 Wis.2d 558, 271 N.W. 2d 105 (1978).

The trial court's judgment of conviction and order denying the defendant's motion for a new trial should be affirmed.

*By the Court.*—Judgment and order affirmed.

COFFEY, J., took no part.