STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrence PAYETTE, Defendant-Appellant.†

Court of Appeals

*Nos. 2007AP1192–CR, 2007AP1193–CR.*
*Submitted on briefs January 31, 2008.—Decided June 3, 2008.*

2008 WI App 106

(Also reported in 756 N.W.2d 423.)

† Petition to review denied 9/11/08.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak*, of *Henak Law Office, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Wedemeyer and Kessler, JJ.

¶ 1. KESSLER, J. Lawrence Payette appeals[1] from the denial of a postconviction motion to withdraw his guilty plea to causing a child to practice prostitution in violation of Wis. Stat. § 948.08 (1997–98),[2] and to causing a child to go into a room or secluded place with intent to give a child cocaine in violation of Wis. Stat. § 948.07(6). He also appeals from the trial court's denial of his motion for resentencing arguing that the trial court considered improper information at sentencing and arguing that the trial court erroneously exercised its discretion by prohibiting Payette from looking at the victim who appeared at sentencing and made an oral statement. We affirm.

[1] This appeal is a consolidation of two appeals, 2007AP1192–CR and 2007AP1193–CR in three cases that were also consolidated at the trial court level. Circuit Court case No. 99CF3688 charged Payette with felony possession of cocaine, second or subsequent offense, and possession of drug paraphernalia, a misdemeanor. Circuit Court case No. 99CF05685 charged Payette with twelve felonies and five misdemeanor criminal offenses. Circuit Court case No. 2000CF000330 contained five felony counts of delivery of cocaine, second or subsequent offense. Based on a plea agreement, Payette pled to an Amended Information which contained one count from case No. 2000CF00330 and three of the felony counts from case No. 99CF05685, with the remaining charges in all the cases being dismissed and read in at sentencing.

[2] The underlying criminal activities occurred in 1998 and 1999. Wisconsin Stat. § 948.08 remained unchanged in both the 1997–98 version and 1999–2000 version of the Wisconsin Statutes.

All further references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## Background

¶ 2. The amended complaint describes patterns of conduct by Payette, either at his apartment or at a motel, in which he gave cocaine to various minor females and in the context of mutual cocaine use had sex with various minor females. The affidavit in support of the amended complaint[3] discloses that on July 13, 1999, a detective investigated an unknown, unconscious female suffering from an apparent drug overdose at St. Luke's Medical Center. The female was RS; her date of birth is October 29, 1982. RS was in a coma for approximately one and one-half weeks. When detectives were able to interview RS on July 24, she told them that on July 13, 1999, she called Payette, whom she had known since January. She went to his apartment, and after having sex with Payette, he gave her crack cocaine. At the time of this event, she was sixteen years old. Payette, who was born March 5, 1941, was then fifty-one years old.

¶ 3. RS described "dope dating" Payette which she explained meant "that she would have sex with [Payette] after they smoked crack cocaine at his apartment." RS reported visiting Payette at his apartment more than thirty times, and each time she went to his apartment they smoked crack cocaine and she had sex with him. RS "had a standing agreement with [Payette] that she would have sexual intercourse with [him] in exchange for crack cocaine." RS is identified as the child victim in the count which alleges violation of WIS. STAT. § 948.08[4] by causing a child to practice prostitution, to which Payette pled guilty.

---

[3] Unless another source is specified, all facts relating to the offenses with which Payette was charged are gleaned from the affidavit included in the amended complaint.

[4] WISCONSIN STAT. § 948.08, "Soliciting a child for prostitu-

¶ 4. VM, who was born February 16, 1984, had known Payette for a year and, on one visit to Payette's apartment, had seen a large quantity of crack cocaine on a plate in his bedroom. VM described visiting Payette at his apartment with a friend and being given crack cocaine by Payette, which they all smoked together. On another occasion, VM and a friend knocked on Payette's door, he let them in, and asked them how much it would cost to have sex with both of them. They refused. Payette then gave them money to buy crack cocaine for him. VM is identified as the child victim in the count alleging violation of WIS. STAT. § 948.07(6)[5] by causing a child to go into a room or secluded place for the purpose of giving the child cocaine, to which Payette pled guilty.

¶ 5. Another minor female, SW, born August 24, 1981, reported that in October 1998, she and another friend, TJ, were with Payette at a particular motel where all three smoked crack cocaine provided by Payette. After smoking the cocaine, when Payette was driving the girls home, SW reported Payette begging her

---

tion," states, in pertinent part: *"Whoever intentionally* solicits or *causes any child to practice prostitution* or establishes any child in a place of prostitution is guilty of a Class BC felony." (Emphasis added.)

[5] WISCONSIN STAT. § 948.07, "Child enticement," states, in pertinent part:

> *Whoever, with intent to commit any of the following acts, causes* or attempts to cause *any child* who has not attained the age of 18 years *to go into any* vehicle, building, *room or secluded place* is guilty of a Class BC felony:
>
> . . . .
>
> **(6)** *Giving* or selling to *the child a controlled substance* or controlled substance analog in violation of ch. 961.

(Emphasis added.)

to return to the motel with him. SW also reported purchasing crack from Payette at another time. TJ, born September 24, 1983, reported smoking crack cocaine for two days with Payette at the same motel identified by SW. SW is the minor victim in the delivery of cocaine to a minor count, and TJ is the minor victim of the delivery of cocaine second or subsequent offense count, to both of which Payette pled guilty, and as to which he does not appeal.

¶ 6. Payette was originally charged with twenty-four criminal offenses which carried a total exposure of 468 years in prison plus fines. A plea bargain reduced the charged offenses to four, each carrying a maximum exposure of twenty years in prison and fines. As part of the plea bargain, the State agreed to dismiss the seventeen original charges, but reserved the right to read them in for purposes of sentencing. The State and Payette agreed to a joint recommendation of total incarceration of forty years, with an additional forty-year stayed sentence, ten years of probation and restitution of RS's medical bills. Payette accepted the bargain, entered his plea, and was sentenced to eighty years in prison. He moved after sentencing to withdraw his plea to the two charges involved in this appeal and, alternatively, for resentencing on those counts. The trial court denied the motion. This appeal followed. Additional facts are provided in the remainder of the opinion as necessary.

## Discussion

I. *Withdrawal of the guilty pleas*

A. Sufficient factual basis for the pleas

¶ 7. Before accepting a guilty plea, the circuit court must determine that a sufficient factual basis

exists for the guilty plea, namely that a crime has been committed and it is probable that the defendant committed it. Wis. Stat. § 971.08(1)(b). A sufficient factual basis requires a showing that " 'the conduct which the defendant admits constitutes the offense charged.' " *State v. Lackershire*, 2007 WI 74, ¶ 33, 301 Wis. 2d 418, 734 N.W.2d 23 (citation omitted). It is not necessary that guilt be the only inference that can be drawn from the facts in the complaint, nor that the inference of guilt is established beyond a reasonable doubt. *See State v. Black*, 2001 WI 31, ¶ 16, 242 Wis. 2d 126, 624 N.W.2d 363 ("[A] factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one."). We review a trial court's determination of a sufficient factual basis under a clearly erroneous standard. *State v. Harvey*, 2006 WI App 26, ¶ 10, 289 Wis. 2d 222, 710 N.W.2d 482 ("Unless it was clearly erroneous, we will uphold the trial court's determination that there existed a sufficient basis to accept the plea.").

¶ 8. Payette seeks to withdraw his guilty pleas to the charges of causing a child to practice prostitution in violation of Wis. Stat. § 948.08 and causing a child to enter a room or secluded place to give the child cocaine in violation of Wis. Stat. § 948.07(6). He argues that the complaint does not allege that he ever "solicited" the child to engage in prostitution (and that it is just as logical to infer that she solicited him) and the complaint does not allege that he "enticed" the child to enter his apartment (as she initiated the contact by knocking on his door), and thus is inadequate to establish a factual basis for either of these two offenses. We disagree.

52

¶ 9. At the guilty plea hearing, Payette agreed that he had carefully gone over the plea questionnaire with his attorney, that it was all correct, that he understood everything on the questionnaire, and that he was pleading guilty to each specific charge because he was guilty. The trial court made a thorough and detailed inquiry of both Payette and his attorney. Both Payette and his attorney agreed the trial court could rely on the facts alleged in the amended complaint, and that those facts established guilt beyond a reasonable doubt as to the counts to which a plea was being entered.

¶ 10. The court inquired about the factual basis for the plea to second or subsequent offense of delivery of cocaine in the following exchange:

COURT: All right, Mr. Payette, at this time, I need to ask you with respect to the case ending in 330,[6] have you reviewed the complaint in that case?

PAYETTE: Yes, sir.

COURT: And do you understand the facts that are alleged in the complaint?

PAYETTE: Yes, sir.

COURT: Are those facts substantially true and correct?

PAYETTE'S ATTORNEY: Judge, with respect to whether they are true and correct, Mr. Payette ac-

_____

[6] The State amended the case number when it filed the amended information with the four charges covered by the plea agreement, and included specific information about a prior delivery of cocaine conviction which was the basis for the "second or subsequent offense" charge added as part of the plea bargain.

knowledges that in fact there were deliveries to [recipient]; doesn't necessarily agree that there was as many as are set forth in the complaint. . . . [B]ut, yes, there were deliveries to [recipient], and we acknowledge that.

(Footnote added.)

¶ 11. The trial court inquired specifically about the factual basis for the counts being dismissed but to be read in at sentencing:

COURT: . . . Then with respect to Case No. 99CF003688, the complaint in that matter, that's an amended complaint that was dated August 12th of 1999, Mr. Payette, have you had an opportunity to review that complaint?

You can see where I'm going, [counsel]. I'm just trying to make sure we got a factual basis.

PAYETTE'S ATTORNEY: The difficulty is there are no counts from that complaint to which he is pleading.

COURT: Yes, that's correct. That was for purposes of the read-in. So if I'm going to read it in, is there any dispute with respect to the facts in that complaint?

[Discussion off the record between Payette and his attorney.]

PAYETTE'S ATTORNEY: No.

¶ 12. Finally, this colloquy occurred regarding the factual basis for the remaining counts involving child prostitution, child enticement for delivery of cocaine, and delivery of cocaine:

COURT: Then with respect to Case No. 99CF005685, the amended criminal complaint in that matter, which is dated November 16th of 1999, Mr. Payette, have you had an opportunity to review that complaint?

54

PAYETTE: Yes, I have reviewed it.

COURT: Are the facts that are alleged in that complaint, are they substantially true and correct?

PAYETTE: Yes.

¶ 13. The court then inquired specifically of Payette's attorney, and then of Payette, about the factual basis for the plea:

COURT: Are you satisfied that there is a factual basis for the Court to accept the plea?

PAYETTE'S ATTORNEY: ... We clearly believe there is a factual basis for these four counts . . . . [A]fter discussing it with Mr. Payette, we were satisfied that even under the best of circumstances, the State would have been in a position to establish beyond a reasonable doubt the facts of the four counts to which he is pleading guilty. We are not that confident with respect to the read-in issues, but that really doesn't affect or impact the plea.

. . . .

COURT: [Payette's Attorney,] with respect to the four counts in which your client is entering his pleas, any objection to the Court using the criminal complaint as a factual basis for accepting the guilty pleas?

PAYETTE'S ATTORNEY: No.

COURT: Before I ask you that question, Mr. Payette, I'm going to ask you this. Do you have any questions about anything regarding these pleas or this case?

PAYETTE: I discussed most of these matters with my attorney, and he kind of cleared, you know, the air on how to go forward. I'm confident in my attorney with the guilty plea, and it's all clear. You know, I'm basically understanding what he's saying.

COURT: I just want to make sure because there is a lot of counts here. There are a lot of issues, and I just want to make sure if there are any questions.

All right. Then at this time, Mr. Payette, any objection to the Court using the criminal complaint as a factual basis for accepting your guilty pleas to the four counts?

PAYETTE'S ATTORNEY: One moment, Judge.

[Off the record discussion with Payette by his attorney.]

PAYETTE: No objection.

¶ 14. Whether the complaint alleges sufficient facts to establish probable cause that Payette committed the crimes charged is a question of law which we review *de novo*. *State v. Grimm*, 2002 WI App 242, ¶ 15, 258 Wis. 2d 166, 653 N.W.2d 284 (citing *State v. Manthey*, 169 Wis. 2d 673, 685, 688–89, 487 N.W.2d 44 (Ct. App. 1992)). The facts and reasonable inferences from the facts in a complaint must allow a reasonable person to conclude that a crime was probably committed by the defendant. *Id.* If reasonable inferences support probable cause and also support a contrary inference, the complaint is sufficient. *Id.* Thus, we examine the affidavit in the amended complaint to determine whether there are facts and reasonable inferences which support the charges which are the subject of this appeal.

¶ 15. Payette is charged with violating WIS. STAT. § 948.08,[7] which provides that: "Whoever intentionally solicits *or causes* any child to practice prostitution

---

[7] WISCONSIN STAT. § 948.08 was created by 1987 Wis. Act 332 as part of the revision of the criminal statutes relating to crimes against children.

or establishes any child in a place of prostitution is guilty of a Class BC felony."[8] (Emphasis added.) This statute, except for the reference to a child, and the level of punishment, is identical in language to Wis. Stat. § 944.32, which provides that: "[W]hoever intentionally solicits *or causes* any person to practice prostitution or establishes any person in a place of prostitution is guilty of a Class D felony."[9] (Emphasis added.) Neither statute contains language which limits its application only to the person who specifically initiates whatever conversation or contact occurs.

¶ 16. The term "prostitution" is defined in Wis. Stat. § 944.30(1) to include someone who intentionally "[h]as or offers to have or requests to have *nonmarital sexual intercourse for anything of value.*" (Emphasis added.) The complaint clearly establishes that RS had nonmarital sexual intercourse with Payette repeatedly in exchange for something of value, namely cocaine. Although there are no reported cases specifically construing Wis. Stat. § 948.08, such is not the case for application of its sister statute, Wis. Stat. § 944.32. In *State v. Johnson*, 108 Wis. 2d 703, 711–12, 324 N.W.2d 447 (Ct. App. 1982), we explained that under § 944.32, the meaning of causing a person "to 'practice' prostitution" is " 'to do or perform often, customarily, or habitually.' " (Citation omitted.) The habitual nature of Payette's trading cocaine for sex with RS (over thirty times) satisfies the § 948.08 requisite that RS did "practice prostitution" with Payette.

---

[8] Wisconsin Stat. § 939.50(3)(bc) states: "For a Class BC felony, a fine not to exceed $10,000 or imprisonment not to exceed 20 years, or both."

[9] Wisconsin Stat. § 939.50(3)(d) states: "For a Class D felony, a fine not to exceed $10,000 or imprisonment not to exceed 5 years, or both."

¶ 17. We consider, therefore, whether the complaint provides a factual basis from which to conclude that Payette "caused" RS to practice prostitution. As we discussed in *State v. Block*, 170 Wis. 2d 676, 682–83, 489 N.W.2d 715 (Ct. App. 1992), a criminal result (death of a person) may occur because of more than one cause. A cause may be prohibited by the criminal code (e.g., intentional injury) while another cause in the chain of events may not be so prohibited (e.g., medical negligence). The existence of multiple causes of a particular outcome does not remove criminal liability if the criminal conduct was a "substantial factor" contributing to the ultimate result. *See id.* at 683 ("The prosecution is required to prove beyond a reasonable doubt only that defendant's acts were a 'substantial factor' in causing the victim's death—not that they were the sole cause.").

¶ 18. WISCONSIN JI—CRIMINAL 901 explains: " 'Cause' means that the defendant's conduct was *a substantial factor* in producing" the consequence at issue. (Emphasis added.) The instruction continues to explain that "[t]here may be more than one cause" (of the consequence at issue) and that "[t]he act of one person alone might produce it, or the acts of two or more persons might jointly produce it." *Id.*

¶ 19. In considering causation in the context of WIS. STAT. § 948.07, which prohibits anyone from intentionally "caus[ing] . . . any child . . . to go into . . . [a] room or secluded place" with the intent of performing various prohibited acts, we noted in *State v. Provo*, 2004 WI App 97, 272 Wis. 2d 837, 681 N.W.2d 272, that "[t]he statute unambiguously requires that the defendant cause the child to go into any room," (relying on *State v. Gomez*, 179 Wis. 2d 400, 405, 507 N.W.2d 378 (Ct. App. 1983)), and concluded that when the defendant directed

the victim to go to her room in a house they shared, the causation required by § 948.07 had been established. *Provo*, 272 Wis. 2d 837, ¶¶ 8–9 (emphasis in *Provo* omitted).

¶ 20. In *State v. Huff*, 123 Wis. 2d 397, 400–01, 04, 367 N.W.2d 226 (Ct. App. 1985), the defendant was charged with sixteen counts of violating WIS. STAT. § 944.32[10] by recruiting high school students to have sex with him for which he paid them a fee. *Huff*, 123 Wis. 2d at 401. In reviewing a challenge to the sufficiency of the preliminary hearing evidence against Huff's claim because there was no evidence that he solicited the prostitution for someone else and no evidence that he gained financially from the prostitution, we concluded that the focus of the statute was "to curtail the recruitment of males and females into the practice of providing sex" for something of value, and rejected the argument that causing someone to practice prostitution had to be for the sexual encounter with a person other than the recruiter. *Id.* at 404–05. We did not decide Huff's additional challenge to the sufficiency of the evidence (which we described as being of "dubious merit"), that "the girls, on occasion, solicited him – not the other way around." *See id.* at 407.

¶ 21. Payette focuses on only whether the complaint alleges "solicitation," although that is only one of the two alternative types of conduct prohibited by WIS. STAT. § 948.08. A plain reading of a statute where the disjunctive "or" sits between other terms, requires that effect must be given to all of the terms. *See Harvey*, 289

---

[10] At the time of our decision in *State v. Huff*, 123 Wis. 2d 397, 367 N.W.2d 226 (Ct. App. 1985), WIS. STAT. § 944.32 contained one penalty for violation if the victim was an adult, and a different penalty if the victim was under the age of eighteen.

Wis. 2d 222, ¶ 48 ("where two statutory approaches are stated in the disjunctive, either approach may be employed"); *State v. Bodoh*, 220 Wis. 2d 102, 108, 582 N.W.2d 440 (Ct. App. 1998) ("One of the maxims of statutory construction is that a law should be construed so that no term is redundant of another term."). Although § 948.08 is colloquially referred to as prohibiting "solicitation," the statute also specifically, and alternatively, prohibits "causing" a child to practice prostitution. As we have seen, "cause" is "a substantial factor" which need not be the first cause, nor the sole cause, of a child practicing prostitution.

¶ 22. The complaint discloses a pattern in which Payette's conduct is a substantial factor causing young girls (including RS) to repeatedly and habitually engage in nonmarital sexual acts with him in exchange for something of value, namely the cocaine which he provided. There is no dispute that each victim was under the age of eighteen at the time of the various offenses. On more than thirty occasions, Payette received sex with RS in exchange for cocaine pursuant to "an understanding" between them. Payette's claim that the complaint does not allege that RS was not a prostitute before their encounter, and that the complaint does not allege that he initially proposed the "understanding" of trading sex for cocaine, is irrelevant to the permitted inference that Payette's conduct was a substantial factor causing the prostitution so graphically described.

¶ 23. The complaint also alleges that Payette repeatedly and habitually supplied cocaine to young girls at various locations, including his apartment, a particular motel, and other residences in Milwaukee County. Similarly, when reviewing Wis. Stat. § 948.07, the complaint alleges facts from which the trial court could

conclude that Payette voluntarily admitted minor females (including SW, TJ, and VM) to his apartment, thus causing each of them to come into "a room or secluded place," where he gave each of them cocaine. The cocaine was visible to VM from outside the door of Payette's apartment, and thereafter Payette gave her cocaine in the apartment. The trial court could reasonably infer from that information that Payette admitted VM with the intent to give her cocaine. The complaint also alleges that Payette routinely gave so many girls cocaine after he admitted them to various rooms or secluded places (apartment, motel room, other residences) that his intent to give them cocaine there, as alleged in the complaint, could reasonably be inferred from his conduct. *See* Wis JI—Criminal 923A ("You cannot look into a person's mind to find intent. Intent . . . must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon intent."); Wis JI—Criminal 770, cmt. ("Criminal intent or any other mental element of crime is nearly always proved circumstantially, by inference from the actor's conduct.").

¶ 24. Against this background, the inference from the complaint is not only reasonable but overwhelming that in each instance Payette's conduct was a substantial factor in causing the girl to engage in "the practice of prostitution" or to "enter into a room or secluded place" where Payette's pattern of conduct permits the inference that he intended to give them cocaine.

B. Withdrawal of guilty plea after sentencing

¶ 25. A defendant who seeks to withdraw a guilty plea after sentencing, has the burden of showing "mani-

61

fest injustice" by clear and convincing evidence. *State v. Thomas*, 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836. "One type of manifest injustice is the failure to establish a sufficient factual basis that the defendant committed the offense to which he or she pleads." *State v. Johnson*, 207 Wis. 2d 239, 244, 558 N.W.2d 375 (1997). In other words, a defendant has the burden to show, by clear and convincing evidence, that there is no factual basis that the conduct admitted to actually falls within the charge. *White v. State*, 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978).

¶ 26. As our supreme court explained in *White*, "[i]n applying the manifest injustice test on review, this court may consider the whole record since the issue is no longer whether the guilty plea should have been accepted, but rather whether there was an [erroneous exercise] of discretion in the trial court's denial of the motion to withdraw." *Id.* Later, in *Thomas*, our supreme court held that "[o]n a motion to withdraw, a court may look at the totality of the circumstances to determine whether a defendant has accepted the factual basis presented underlying the guilty plea . . . . Moreover, we have previously permitted a court reviewing the voluntariness requirement to . . . review the record of the postconviction hearing." *Id.*, 232 Wis. 2d 714, ¶ 23. Further, the record reviewed may include the record of the sentencing hearing and defense counsel's statements concerning the factual basis. *Id.*, ¶ 24.

¶ 27. When we consider the entire record, we conclude that Payette has not shown that manifest injustice would result from refusing to permit him to withdraw his guilty pleas. As we have explained, the complaint establishes a factual basis for the pleas. In

62

addition, Payette's admissions, his counsel's statements as his agent, the information in the record from and on behalf of the victims, and the presentence investigation report confirm the overwhelming conclusion from the record as a whole that Payette, in fact, engaged in a continuing pattern of conduct by which he introduced female minors to cocaine, then obtained sexual favors from them in exchange for cocaine. Nothing in the record as a whole suggests that any of Payette's conduct was accidental, inadvertent, a mistake, or that his conduct was not a substantial factor causing the practice of prostitution or causing these minors to enter his apartment or home or hotel room where he gave them cocaine.

¶ 28. The sentencing transcript graphically describes Payette's conduct and the impact that conduct and the court proceedings had on the victims and their families. The trial court found Payette's prior record[11] of offenses involving children and drugs began in 1961 and showed a pattern of blaming others for his conduct. His prior offenses included, in 1961, giving marijuana to a child, then claiming the child stole it. His violent rape, in 1973, of his wife's twelve-year-old sister, he explained happened because he had no sex in his relationship with his wife. He explained a drug conviction as his dealer setting him up with an undercover agent.

---

[11] Payette's full record is not included in this appeal. Hence, our observations are taken from the sentencing transcript and we assume that there is a factual basis which supports the trial court findings. This court assumes that information absent from the appellate record supports the findings of the trial court. *See State v. Benton*, 2001 WI App 81, ¶ 10, 243 Wis. 2d 54, 625 N.W.2d 923.

¶ 29. Payette left RS in a Wal-Mart parking lot when she was high on crack cocaine he had given her. The State described RS's condition when she was found as "incoherent," unable to speak, and looking "like she's dead." The State introduced pictures[12] of RS taken when she was found. The pictures of RS are described as looking like "someone just pummeled her . . . beat her up." Payette objected, unsuccessfully, to the use of these pictures at sentencing, arguing that RS caused the injuries herself when she ran into an SUV after he let her out.

¶ 30. RS's father described how RS was found by police, and taken to St. Luke's Hospital because she was incoherent and obviously very ill. RS's fight for life, as seen through her family's eyes, included ten days in a coma, multi-system organ failures, being placed on life support and on various organ transplant waiting lists, and suffering post-traumatic stress disorder. She suffered brain damage which may be permanent, including short-term memory loss and language difficulties. She had episodes of paranoia and flashbacks. She spent six months in a hospital or rehabilitation center, and has been treated in a children's inpatient mental health facility.

¶ 31. With regard to TJ, the victim in one of the read-in delivery of cocaine counts, the State told the court that Payette first got her to try cocaine in Coleman, Wisconsin, which resulted in his being charged in Marinette County as keeper of a drug house

---

[12] Neither the pictures displayed at sentencing, nor the presentence report, nor the letter to the court written by one of the victims are a part of the record in this case, although reference to each is made during the sentencing hearing. We assume that this information supports the trial court's findings. *See id.*

and for delivery of a controlled substance to a minor. Payette is reported to have given TJ so much cocaine in a motel room in the Milwaukee area that she passed out.

¶ 32. The State characterizes Payette as preying on "very young, impressionable teenage girls" and enticing them with cocaine, trying to "get them hooked on the cocaine and dependent so he could use them for sex." The State summarized the facts involved in many of the read-in counts, by describing the general conduct involved in the multiple counts of delivery of cocaine to children in Payette's apartment, in Payette's daughter's apartment, or in a motel room. Payette's repeated explicit sexual comments to SW, how he told her he wanted to have sex with her and was rejected, how he begged SW, gave her his phone number and invited her to call "if you ever want to party," are all described.

¶ 33. The effect of Payette's conduct on JR, the victim in the delivery of cocaine second or subsequent offense, to which Payette pled guilty, is described by the State based to some degree on a letter she wrote to the trial court for sentencing.[13] JR lived with Payette and one of his daughters in Coleman, Wisconsin, from the summer of 1998 to early 1999. Payette habitually and repeatedly made sexually explicit comments to JR, habitually and repeatedly grabbed her breasts and buttocks, and attempted to get in the shower with her. Payette gave her crack cocaine, initially telling JR that she did not owe him anything for it, then later claiming she owed him sex for the cocaine. The sexual encoun-

---

[13] Again, because this letter is not part of the record on appeal, we assume its contents support the characterizations in the record and the trial court's findings. *See id.*

ters were violent. At the time of sentencing, JR suffered from flashbacks and nightmares, waking up fighting and combative.

¶ 34. The trial court considered the seriousness of the offenses, Payette's character, which the court notes is "what really makes this a very frightening situation," and Payette's extensive prior record which included using children, abusing cocaine and controlled substances, and rejecting treatment. The court discussed the impact on the victims and the victims' families. The court concluded that Payette was "a very dangerous man."

¶ 35. There is ample basis in the record as described *supra* which supports the trial court's decision. The facts, and the trial court's conclusions therefrom, make it clear to us that no manifest injustice resulted from the trial court's refusal to allow Payette to withdraw his guilty pleas to the two counts involved here.

## II. The sentencing

A. Anonymous threats to victim witnesses and damage to their property

¶ 36. In describing the traumatic effect of the charges and court proceedings on two specific victims, the State told the trial court about threatening telephone calls made to TJ and to SW to try to dissuade them from testifying while this case was pending. The State described the threatening telephone calls to TJ over a period of three months, which TJ's mother intercepted. The specific threats described were that "she [is] going to get her ass beat if she testifies; the house is going to be fire bombed; they're going to kill [TJ]." These threats were reported to the police. In addition, someone smashed the windows of TJ's car and

a few weeks later, someone pulled out the wires from the starter or alternator from another family vehicle. While the case was pending, two criminal damage to property complaints were filed based on these events.

¶ 37. The State also advised the court that SW was the victim of someone burning down her garage and someone throwing a brick through a window at her house. These acts of criminal damage to property were reported to the police.

¶ 38. The State conceded that it had no evidence that Payette was involved in the threats to either witness or in the damage to their property, but argued that because the threatened witnesses were involved in no other litigation, it had to be "people involved with him."

¶ 39. Payette objected to this information as irrelevant to sentencing since the State could not link Payette and the threats. The trial court overruled the objection. When the court imposed sentence and explained its reasons for the sentence, it made no mention whatsoever of the threats or the property damage.[14] In denying Payette's postconviction motion, the trial court disavowed any reliance on the threats or the property damage.

¶ 40. Among the factors that have been recognized as appropriate for a court to consider at sentencing are read-ins and the effect of the crime on the victim. *State v. Gallion*, 2004 WI 42, ¶ 43 n.11, 270 Wis. 2d 535, 678 N.W.2d 197 (citing *Austin v. State*, 49

---

[14] The evidence of the threats and the criminal damage to property was not relevant to Payette's character. The State acknowledged that it had no evidence that Payette was responsible for the threats or property damage. The evidence had no relevance to his guilt, which he had already admitted.

Wis. 2d 727, 183 N.W.2d 56 (1971) (read-ins); *State v. Jones*, 151 Wis. 2d 488, 496, 444 N.W.2d 760 (Ct. App. 1989) (effect on victim)).

¶ 41. The court process is a predictable consequence of conduct which results in a criminal charge. Hence, if a victim is affected specifically because the victim becomes a witness, a court can reasonably consider that effect on the victim as part of the overall sentencing calculus. *Jones*, 151 Wis. 2d at 496. Here, the threats both victims reported were directly related to their intent to testify in court in these proceedings; they were not involved in any other litigation. The duration of the threats was substantial; telephone calls for three months is not an isolated incident. The threats were reported to the police. The property damage followed the verbal threats and involved some damage predicted by the threats, although another victim suffered the burning of her property. Both victims reported the property damage to the police before the sentencing. The combination of these factors makes it unlikely that these events were fabricated by the victims simply to garner sympathy from the court. Thus, we are persuaded that there was no error if the sentencing court had considered the effect of these events, which were reported to the police and which directly related to the victims' intentions to testify in these cases, for the limited purpose of considering the impact of these proceedings on the victim witnesses.

¶ 42. Payette argues that because the trial court imposed the maximum sentence, which was double what the State recommended, the trial court must have considered the information about the threats. Payette argues, relying on *Bowie v. State*, 85 Wis. 2d 549, 553, 271 N.W.2d 110 (1978), that allowing information at

sentencing which is unconnected to the defendant is a denial of fundamental fairness and due process just as surely as such information would be if it had been permitted at trial.

¶ 43. In Bowie, during a witness's testimony before the jury, the witness testified she had been threatened concerning her testimony. *Id.* at 552–53. Bowie objected. *Id.* at 553. The trial court sustained the objection. *Id.* Out of the jury's presence, the trial court determined that the witness could not connect the defendant with the threat. *Id.* The trial court denied Bowie's motion for a mistrial, but specifically instructed the jury to completely disregard the question and answer they had heard. *Id.* at 553. The court in *Bowie* explained that evidence of threats by a defendant or co-conspirator is "circumstantial evidence of consciousness of guilt." *Id.* at 553 (citation and internal quotation marks omitted). However, testimony about threats to a witness is inadmissible at trial if not connected to the defendant, because it must be considered an effort to "prejudice the defendant before the jury in a way which he cannot rebut satisfactorily because he does not know the true identity of the [person making the threat]." *Id.* at 554 (citation and internal quotation marks omitted). Our supreme court found that the statement was properly rejected, the curative instruction appropriate and the limited reference in the context of the overall trial was harmless. *Id.* at 554–55. The court sustained the conviction. *Id.* at 555.

¶ 44. Because Payette pled guilty long before the threats in this case were described at sentencing, the threats could have had no effect on the determination of his guilt or innocence of the underlying charges. His "consciousness of guilt" had already been established

beyond a reasonable doubt by his knowing and voluntary guilty plea. *See id.* at 553. Thus, the fear of unfair prejudice in determining guilt or innocence on which the analysis in *Bowie* is premised is of minimal assistance here. The sentencing court did not in any way refer to the threats or property damage in its sentencing statement, and specifically disavowed reliance on that information in its denial of the motion to withdraw the guilty pleas. Thus, we are not persuaded that the analysis in *Bowie* compels withdrawal of Payette's guilty pleas.

¶ 45. Payette characterizes the evidence of threats and damage to property as inaccurate information because the State cannot establish that he was responsible for either. As inaccurate information, he argues that he is entitled to resentencing as ordered in *State v. Groth*, 2002 WI App 299, 258 Wis. 2d 889, 655 N.W.2d 163, *overruled on other grounds by State v. Tiepelman*, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1.

¶ 46. "A defendant has a due process right to be sentenced based on accurate information. Whether a defendant has been denied the due process right to be sentenced based on accurate information is a 'constitutional issue' presenting 'a question of law which we review *de novo.*' " *Groth*, 258 Wis. 2d 889, ¶ 21 (citations omitted). The defendant requesting resentencing must prove, by clear and convincing evidence, both that the information is inaccurate and that the trial court relied upon it. *Id.*, ¶ 22. "Once a defendant does so, the burden shifts to the State to show that the error was harmless. An error is harmless if there is no reasonable probability that it contributed to the outcome." *Id.* (citation omitted).

¶ 47. In *Groth*, at sentencing, the State made repeated references to Groth having a habit of beating pregnant women. *Id.*, 258 Wis. 2d 889, ¶ 16. In response to a motion for resentencing, the State conceded that it could not establish that Groth beat pregnant women. *Id.*, ¶ 18. Thus, Groth established that the information was inaccurate. *Id.* The sentencing transcript established that the court actually relied upon the inaccurate information. *Id.*, ¶ 27. The State, therefore, had the obligation to establish that the trial court's explicit reliance on the inaccurate information was harmless. *Id.*, ¶ 22. We were not persuaded in *Groth* that the trial court's post-sentencing disclaimer of reliance was sufficient to establish harmless error. *Id.*, ¶ 27. We concluded that the inaccurate information, which was "so heinous that it would be difficult (if not impossible or improper) for any sentencing court to ignore it as an aggravating factor affecting the assessment of a defendant's character," *id.*, ¶ 31, compelled the conclusion that the integrity of the sentencing process required resentencing, *id.*, ¶ 34.

¶ 48. The record establishes that, at his plea hearing, Payette admitted the factual basis for twenty-four criminal charges involving children, sex and drugs. These included: six counts of delivery of cocaine to a minor, as a second or subsequent offense; one count of soliciting a child for prostitution; two counts of child enticement; one count of soliciting a child for delivery of cocaine; two counts of keeping a drug house, second or subsequent offense; one count of sexual intercourse with a child age sixteen or older; and four counts of contributing to the delinquency of a child. Payette had a prior history of involvement in a variety of illegal activities involving children, sex, drugs, and violence starting in 1961 (e.g., giving marijuana to a minor,

71

giving cocaine to minors, resisting arrest, rape of his wife's twelve-year-old sister, and sexual assault of a child living with Payette and his daughter). He had a pattern of using children, completely disregarding the effect of his conduct on them, all to, as the court described it, satisfy his "distorted, perverse corrupt desires." He had previously been fined, put on probation, sent to prison and put on parole. He also demonstrated a continuing pattern of blaming his troubles with the law on other people. He had previously refused sex treatment and domestic violence counseling. The sentencing court concluded:

> You are a very dangerous man, Mr. Payette. You are dangerous because you do not recognize and respect yourself or anyone else, and you do not respect children. And so . . . for all of these reasons, as well as the countless read-ins . . . that have been stated to the Court on this case, it is apparent to me that probation is not an appropriate option . . . and that confinement is necessary to protect the public as well as to address the extensive treatment needs that you have in this matter.

¶ 49. In the context of all the information available to the trial court, there was ample factual basis for the trial court's decision to impose the maximum incarceration. These facts included: the veritable avalanche of read-in offenses involving Payette trading cocaine with minor females in exchange for sex and giving cocaine to minor females; the effect of this conduct on his victims; Payette's extensive prior record of offenses involving children, sex and drugs; his prior experiences with fines, probation, and prison; and his refusal to obtain recommended treatment. In view of all the surrounding facts and circumstances, we conclude

that had there been any error in admitting the references to the threats and the property damage at sentencing, it was harmless beyond a reasonable doubt.

¶ 50. Additionally, contrary to Payette's argument that the State's discussion of the threats explains the sentence well in excess of what the State recommended, there is abundant evidence in the record which supports the sentencing court's decision to impose the maximum sentence. Error, if any occurred, in considering the impact of the threats and property damage on the victims, was harmless.

B. Prohibition against looking at victim during her sentencing statement

¶ 51. The trial court, having just heard a lengthy description of Payette's violent and abusive conduct toward RS, directed that Payette not look at his victim during her statement to the court, because, the trial court said, "I just don't want him intimidating her. We just asked him to turn around." Payette claims that this order deprived him of his statutory (WIS. STAT. § 971.04[15]) and due process right to be present at his sentencing, and he is, therefore, entitled to resentencing.

¶ 52. Payette was not denied his right to "be present . . . [at] the imposition of sentence" provided by WIS. STAT. § 971.04(1)(g). It is undisputed that Payette remained in the courtroom throughout the sentencing, and that he was present when sentence was imposed.

---

[15] WISCONSIN STAT. § 971.04, "Defendant to be present," states, in pertinent part: "(1) Except as provided in subs. (2) and (3), the defendant shall be present: . . . (g) At the pronouncement of judgment and the imposition of sentence . . . ."

¶ 53. There is no claim that, because of the trial court's order not to look at the victim, Payette was unable to consult with trial counsel, or that he was restricted from full participation in any way except that he was not permitted to look at the victim during her sentencing statement. Payette was no more limited in his ability to present his rebuttal to the statement RS made than he would have been had she made her statement by telephone, or had she sent a written statement to the court as JR did.

¶ 54. To support his claim that he was denied his constitutional right under the Sixth Amendment to confront witnesses, Payette relies primarily on two cases that deal with trial testimony: *Coy v. Iowa*, 487 U.S. 1012 (1988), which on right of confrontation grounds overturned an Iowa statute permitting a trial court to screen a child witness from view by a defendant during the child's testimony; and *State v. Thomas*, 150 Wis. 2d 374, 442 N.W.2d 10 (1989), which was our supreme court's analysis of *Coy*, and in which our supreme court concluded that although a legislative declaration alone could not defeat direct witness confrontation requirements, case-by-case exceptions could be made. *See Thomas*, 150 Wis. 2d at 380 ("[W]e can conclude . . . that exceptions to 'face-to-face' confrontation . . . may be recognized when there are case-specific and witness-specific findings of necessity.").

¶ 55. It is "the duty of an appellate court to support the exercise of discretion whenever the facts of record supply an *ab initio* discretionary determination supporting the decision of the trial judge." *Id.* at 388. Sixth Amendment rights of confrontation during trial have been distinguished from rights during postconvic-

tion proceedings. *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005). After conviction, "witnesses providing information to the court . . . are not accusers within the meaning of the confrontation clause." *Id.* Excluding the imposition of sentence, there is no automatic right under WIS. STAT. § 971.04(1) even to be present at all postconviction hearings. *State v. Vennemann*, 180 Wis. 2d 81, 93, 508 N.W.2d 404 (1993).

¶ 56. A sentencing hearing is conducted with considerably more latitude than a trial. *See* WIS. STAT. § 972.14, "Statements before sentencing," which states, in pertinent part:

> (3)(a) Before pronouncing sentence, the court shall determine whether a victim of a crime considered at sentencing wants to make a statement to the court. If a victim wants to make a statement, the court shall allow the victim to make a statement in court or to submit a written statement to be read in court. The court may allow any other person to make or submit a statement under this paragraph. Any statement under this paragraph must be relevant to the sentence.

Persons making statements at a sentencing hearing are not testifying in the traditional sense; they need not be sworn, and they are not bound by the rules of evidence. *Id.*; *cf.* Harvey, 289 Wis. 2d 222, ¶ 34 n.8.

¶ 57. In *Thomas*, our court considered whether a trial court had properly applied the defendant's constitutional right of confrontation of a child witness as explained by the United States Supreme Court in *Coy*, where Justice Scalia concluded that the constitution required a literal face-to-face encounter between the witness and the accused in a criminal trial. *Thomas*, 150 Wis. 2d at 377 (discussing *Coy*, 487 U.S. at 1019–20). Our court concluded that even with the literal face-to-face confrontation language in *Coy*, the

Supreme Court continued to recognize that " 'exceptions . . . necessary to further an important public policy' " could still be allowed, but only if there were " 'individualized findings that [the] particular witnesses needed special protection.' " *Thomas*, 150 Wis. 2d at 378 (quoting *Coy*, 487 U.S. at 1021). Both *Coy* and *Thomas* involved witnesses testifying during trial. *Thomas* upheld the trial court's exercise of discretion in permitting a videotape for use at trial of an eight-year-old child's testimony about the defendant's multiple sexual assaults of her, with arrangements during the videotape for the defendant to be screened from her view, but to be able to see her and to be completely present for the entirety of the proceedings. *See Thomas*, 150 Wis. 2d at 389. Our supreme court has also upheld the trial court's discretionary denial of the right to even be present in order to make postconviction-sensitive testimony less traumatic for an adult witness. *See State v. Delgado*, 215 Wis. 2d 16, 24, 572 N.W.2d 479 (Ct. App. 1997), *rev'd on other grounds*, 223 Wis. 2d 270, 588 N.W.2d 1 (1999) (The trial court's stated reason for refusing to produce Delgado, who had been convicted by a jury of six sexual assaults, was to make it more comfortable for the juror to testify about a difficult subject.).

¶ 58. Payette was physically present in the courtroom at "the imposition of sentence." He was present during all of RS's sentencing statement to the court. Payette does not claim he was unable to hear all of the proceedings. He does not claim he was unable to consult with his attorney. He does not claim he wished to refute anything RS said, but had no opportunity to do so.

¶ 59. A trial court has considerable latitude in reasonable control of the courtroom and the conduct of parties and of witnesses before it. Wis. Stat. § 906.11(1); *State v. Shanks*, 2002 WI App 93, ¶ 10, 253 Wis. 2d 600,

644 N.W.2d 275 ("trial court has the power to alter courtroom procedures in order to protect the emotional well-being of a child witness"). We conclude that the limited restriction imposed here, based on the facts known to the trial court at the time, was a reasonable exercise of the trial court's discretion to control the manner of proceedings before it. Neither Payette's statutory nor constitutional rights were violated by this minor restriction during a small part of the sentencing hearing, nor has he demonstrated that he was in any articulable way prejudiced by it.

*By the Court.*—Judgments and orders affirmed.