COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP510-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CF305

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

SAMANTHA TAMMY OLSEN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Marinette County:  JAMES A. MORRISON, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Samantha Olsen appeals from a judgment convicting her of the delivery of fentanyl and from an order denying her

postconviction motion for resentencing. Olsen contends that the circuit court, in imposing her sentence, relied upon inaccurate information that she had "killed" the man to whom she delivered the drug, despite questions as to the causation of the man's death that had led to a plea deal reducing the charge against Olsen from first-degree reckless homicide by delivery of fentanyl (commonly known as a Len Bias homicide) to delivery of fentanyl. We conclude that Olsen has failed to satisfy her burden of showing that the information was inaccurate, and we therefore affirm.

## BACKGROUND

¶2 The initial Len Bias charge against Olsen was based upon allegations that: (1) Olsen obtained a morphine pill containing fentanyl from a third party; (2) Olsen should have been aware that the pill contained fentanyl because she knew five people who had overdosed using morphine pills from the same source; (3) Olsen gave the pill to Tyler because he was looking for something to help him sleep after having taken methamphetamine; (4) Tyler died of an overdose within hours after Olsen gave him the pill; (5) Tyler was discovered in a locked bathroom with a hypodermic needle under his body, along with a spoon and cotton ball on the counter that tested positive for fentanyl; (6) an autopsy revealed 6.3 ng/mL of fentanyl and 4,300 ng/ml of methamphetamine present in Tyler's blood; and (7) the pathologist opined that fentanyl was a "substantial factor" in causing Tyler's death.

¶3 Shortly before the scheduled trial date, the State disclosed a conversation that prosecutors had with the pathologist during trial preparation. When asked whether Tyler would still be alive absent the fentanyl, the pathologist responded that Tyler would not be alive due to the high levels of

methamphetamine in his blood, but the pathologist opined that the fentanyl was still a "contributing factor" in Tyler's death. According to the pathologist, methamphetamine stresses the heart, requiring it to have more oxygen, while fentanyl causes the body to lose oxygen. The pathologist further described the fentanyl as the "straw that broke the camel's back," given that this was "essentially a needle in arm" case.

¶4 The State then negotiated a deal in which Olsen agreed to plead guilty or no contest to the reduced charge of delivery of fentanyl and to pay restitution. The State in turn agreed to request a presentence investigation and to recommend five years' initial confinement followed by five years' extended supervision, without eligibility for early release programming. At the plea hearing, the circuit court summarized the basis for the amended Information and plea deal, stating that the State did not have a good faith belief that it could meet its burden of proof on the Len Bias charge because the pathologist would have "a very difficult time" tying the fentanyl Olsen had provided to Tyler to his death. The court accepted Olsen's plea to the amended charge.

¶5 At the sentencing hearing, the State offered its agreed-upon recommendation and argued that it was an appropriate sentence, given evidence that Olsen distributed drugs that had led to multiple overdoses in the community and she had continued to deal drugs after Tyler's death. Tyler's mother suggested that Olsen should not get out of prison in four or five years but she should instead "sit for a very long time." Olsen acknowledged that this was a "prison case" without requesting a specific term of initial confinement, but she asked the circuit court to consider that she had begun to take steps to address her own addictions and make changes in her life.

¶6      Prior to imposing sentence, the circuit court commented extensively on the severity of the crime. Among other remarks, the court stated that Olsen "provided [Tyler with] deadly drugs and he died as a result"; that she "provide[d] drugs which killed [Tyler]"; that she "provid[ed] drugs to a guy in the middle of the night that ultimately killed him, there's enough fentanyl in it to kill him and it did"; that it was "clear" Olsen "provided drugs that caused a death"; that Olsen was "one hundred percent responsible"; and that "[Tyler] is not with us today because [Olsen] provided a drug to him in the middle of the night." The court acknowledged that Olsen was not ultimately convicted of homicide because the State was not convinced it could carry its burden of proof, but it observed that "the results of [Olsen's fentanyl] delivery were the same as the results of other deliveries where people had been convicted … of Len Bias homicides." The court then imposed a sentence consisting of seven years' initial confinement followed by five years' extended supervision.

¶7      Olsen filed a postconviction motion, alleging that the circuit court sentenced her based upon an inaccurate understanding that she had actually killed Tyler or caused his death. The court denied the motion. It explained that it did not operate under the assumption that the fentanyl "in and of itself caused [Tyler]'s death." Rather, the court's understanding was that the pathologist would have testified that giving fentanyl "on top of" the methamphetamine that Tyler had already taken caused his death. The court based its understanding on the pathologist's comment that the fentanyl was the "straw that broke the camel's back." Olsen now appeals.

**DISCUSSION**

¶8    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. If a defendant can establish by clear and convincing evidence both that inaccurate information was presented at sentencing and that the court relied upon the misinformation in reaching its determination, the burden shifts to the State to show that the error was harmless. *Id.*, ¶26. A defendant who has been sentenced on inaccurate information that cannot be shown to be harmless is entitled to be resentenced. *State v. Payette*, 2008 WI App 106, ¶¶45-46, 313 Wis. 2d 39, 756 N.W.2d 423.

¶9    This court will independently review a due process claim that a defendant has been sentenced based upon inaccurate information. *Tiepelman*, 291 Wis. 2d 179, ¶9. We will defer, however, to any credibility determinations or factual findings underlying the circuit court's decision on a constitutional issue. *See Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980) (circuit court is the "ultimate arbiter" for credibility determinations); *see also State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (factual findings will be upheld unless clearly erroneous).

¶10    In this case, there is no dispute that the circuit court relied at sentencing upon its understanding that the fentanyl Olsen provided to Tyler caused his death, in conjunction with the methamphetamine Tyler had already taken. The question before us is whether that information was inaccurate.

¶11    We do not deem information to be inaccurate merely because it was contested or incomplete. Rather, the defendant must demonstrate that the

information was "extensively and materially false." ***State v. Travis***, 2013 WI 38, ¶18, 347 Wis. 2d 142, 832 N.W.2d 491.

¶12 We conclude that Olsen failed to demonstrate, by clear and convincing evidence, that the fentanyl-laced morphine pill she gave to Tyler was not a factor in causing his death. The fact that the State was uncertain that it could prove causation *beyond a reasonable doubt* did not preclude the circuit court from finding such causation for the purposes of sentencing. Rather, the court could reasonably form its understanding of causation based on the pathologist's comments that the fentanyl was a contributing factor in Tyler's death and that it was "the straw that broke the camel's back." Because the court's understanding was reasonably drawn from conflicting evidence, we do not deem it materially false or inaccurate to the point of violating Olsen's due process rights.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).